# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 14, 2013

## STATE OF TENNESSEE v. RONALD MCMILLAN

**Appeal from the Criminal Court for Davidson County**
**No. 2012-A-97      Cheryl Blackburn, Judge**

**No. M2012-02491-CCA-R3-CD - Filed August 14, 2013**

The defendant, Ronald McMillan, appeals from his Davidson County Criminal Court guilty-pleaded conviction of aggravated assault, claiming that the trial court erred by denying his motion to withdraw his guilty plea and by ordering that he serve his six-year sentence consecutively to a previously-imposed eight-year sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Brian T. Boyd, Brentwood, Tennessee, for the appellant, Ronald McMillan.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On July 16, 2012, the defendant entered a plea of guilty to one count of aggravated assault in exchange for a six-year sentence, with the manner of service of the sentence, including alignment with the defendant's previously imposed eight-year sentence for a conviction of aggravated burglary, to be determined by the trial court. The State summarized the facts of the offense during the guilty-plea submission hearing:

> [I]f this case had gone to trial today the State's proof would
> have been that on July the 17th, in the early morning hours
> between say 2:00 and 2:30, Mr. Thomas Smoot was on Second

Avenue North here in Nashville, Davidson County, and he became involved in an incident that involved these three men.

He does not, because of what happened to him, have a memory of this incident, but Mr. Max Scruggs and Ms. Diana Langford are here. They worked at McFadden's restaurant at the time and they were able to see not necessarily how this incident got started, but they were able to see Mr. Smoot involved with Mr. Ashworth about something and . . . while Mr. Smoot was involved with Mr. Ashworth[,] Mr. McMillan, who was just kind of in the crowd, came and struck Mr. Smoot, blindsided him, and knocked him essentially unconscious down on the pavement.

After that, Mr. Ashworth came up and stomped Mr. Smoot in the head as he lay there unconscious on the pavement. Mr. Scruggs would also testify that he saw Mr. McCoy come in and get a few punches in on Mr. Smoot also as he lay there on the ground.

. . . .

Mr. Smoot, as I have said, was unconscious. He was unconscious when he went to the hospital at Vanderbilt, he had a skull fracture, he had some bleeding in the brain area, and was hospitalized for several days. He was released and he had to go back to the hospital because of nausea, headaches, and disorientation. Eventually he was released but, obviously, those injuries that he suffered were of a serious nature. . . .

The defendant stated that although he did not generally agree with the State's recitation of the facts, he believed that it was in his best interest to enter the guilty plea.

On September 12, 2012, the defendant filed a motion to withdraw his guilty plea, but he did not allege any grounds in support of his motion. On September 27, 2012, the defendant filed a second motion to withdraw his guilty plea, this time arguing that he had entered his plea only after being coerced by his codefendants and that his conviction of aggravated assault and six-year sentence were unfair in light of the fact that one of his codefendants, Mr. McCoy, pleaded guilty to the lesser included offense of assault in exchange for a sentence of 11 months and 29 days.

At the hearing on the motion to withdraw the plea, the defendant testified that after having "time to think" about the terms of his plea agreement, he became angry that his "charge partner" was "offered 11/29 with a misdemeanor" while he had been offered a six-year sentence in exchange for his guilty plea to aggravated assault, a felony. He said that it was unfair that a single punch could result in his serving a 14-year sentence. He testified that the terms of the plea agreements offered to him and Mr. McCoy "just didn't sit right" with him, so he wrote a letter to his counsel on August 28, 2012, asking counsel to file a motion to withdraw the plea. The defendant acknowledged his guilt of the offense, saying, "I know that I - - I assaulted this guy, but he assaulted a friend of mine, and I felt like I was just helping out a friend . . . ."

During cross-examination, the defendant conceded that the sole basis for his request to withdraw his plea was that Mr. McCoy had been permitted to enter a plea to misdemeanor assault in exchange for a sentence of 11 months and 29 days. He candidly acknowledged that if Mr. McCoy had been given a six-year sentence, he would not have asked to withdraw his plea. The defendant acknowledged that the character and strength of the evidence against him was stronger than that implicating Mr. McCoy. He also conceded that he struck the victim when the victim was not looking and that the single blow he inflicted was sufficient to knock the victim unconscious. The defendant did not dispute that the victim had suffered serious bodily injury as a result of the attack and acknowledged that he was essentially unhappy with his sentence.

Upon questioning by the court, the defendant acknowledged that he told the trial court during the plea colloquy that he had not been coerced. He also admitted that he knew the terms of his agreement as well as the terms of Mr. McCoy's agreement at the time he entered the guilty plea. The defendant admitted that he was suffering from "buyer's remorse" with regard to the plea.

The prosecutor told the court that the State would be placed at a distinct tactical disadvantage should the defendant be permitted to withdraw his plea. He said that the State had made it clear to all three defendants that the State would only accept a plea if all three agreed to enter one. The prosecutor said that the State feared that, given the close relationship between the three defendants, one of the guilty-pleading defendants might attempt to exonerate the defendant at a trial. The prosecutor added that the victim and his father, both of whom would be called as witnesses, lived in West Virginia and that securing their attendance at trial would cost the State a great deal of money. The prosecutor noted that the defendant's plea had come on the day that his case was originally scheduled for trial.

Defense counsel acknowledged that the defendant was fully aware of the terms of all three plea agreements when he entered his guilty plea. Counsel also conceded that the

defendant entered his plea against the advice of counsel.

At the conclusion of the hearing, the trial court denied the defendant's motion to withdraw his plea, observing that "[h]ow one defendant is handled is not a standard for which another is to be handled. That is not a fair and just reason." In a written order, the trial court noted that a significant period of time had elapsed between the plea and the motion to withdraw, that the defendant presented no evidence to excuse this passage of time, that the defendant acknowledged his guilt of the offense, that the defendant had a lengthy criminal history reflecting significant experience with the criminal justice system, and that permitting the defendant to withdraw his plea would place the State at a tactical disadvantage.

Following a sentencing hearing, the trial court ordered the defendant to serve his six-year sentence in confinement consecutively to a previously-imposed eight-year sentence.

The defendant filed a timely notice of appeal, challenging the trial court's denial of his motion to withdraw his guilty plea and the trial court's order for consecutive sentencing. We consider each claim in turn.

*I. Motion to Withdraw Plea*

The defendant contends that the trial court erred by denying his motion to withdraw his guilty plea. He claims that his displeasure with the apparent disparity between the plea agreement offered to him and that offered to Mr. McCoy constitutes a "fair and just" reason for withdrawing the plea. The State asserts that the trial court committed no error.

The decision whether to permit a defendant to withdraw his plea "is a matter addressed to the sound discretion of the trial court, regardless of when the motion is filed." *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)*; see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010); *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003).

Generally, "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *Phelps*, 329 S.W.3d at 444 (citing *Crowe*, 168 S.W.3d at 740; *Mellon*, 118 S.W.3d at 345); *see also State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Although the trial court "'should always exercise [its] discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial,'" *Phelps*, 329 S.W.3d at 444 (quoting *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)), "the defendant bears the burden of establishing sufficient grounds for withdrawing his plea," *Phelps*, 329 S.W.3d at 444 (citing *Turner*, 919 S.W.2d at 355).

Rule 32(f) of the Tennessee Rules of Criminal Procedure provides that the trial court "may grant a motion to withdraw a guilty plea for any fair and just reason" prior to sentence imposition, Tenn. R. Crim. P. 32(f), and our supreme court has utilized the federal interpretation of the phrase "any fair and just reason," *Phelps*, 329 S.W.3d at 445. Under that adaptation, the court adopted a multi-factor analysis for determining whether the defendant should be permitted to withdraw his plea before the sentence has been imposed. Among the non-exclusive factors that the court must consider are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it;
> (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
> (3) whether the defendant has asserted or maintained his innocence;
> (4) the circumstances underlying the entry of the guilty plea;
> (5) the defendant's nature and background;
> (6) the degree to which the defendant has had prior experience with the criminal justice system; and
> (7) potential prejudice to the government if the motion to withdraw is granted.

*Phelps*, 329 S.W.3d at 446 (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)). The supreme court specifically held that, in the case of a motion to withdraw a plea filed prior to sentencing, "where a trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a 'change of heart.'" *Phelps*, 329 S.W.3d at 448.

In this case, the defendant filed the motion to withdraw his plea seven weeks after entering the plea, the same period of time that the supreme court deemed "a significant length of time" that weighed against permitting withdrawal of the plea. *Id.* at 449. To explain this lapse of time, the defendant said only that the plea agreement "didn't sit right" with him after thought and reflection. The lack of an explanation for the lapse of time between the plea and the motion to withdraw weighs against permitting withdrawal of the plea.

Although the defendant claims in his brief that he had maintained his innocence throughout the proceedings, the record establishes that the defendant candidly admitted that he struck the victim, knocking him instantly unconscious. The defendant claimed that he believed he was "helping out a friend" when he struck the victim, but nothing in the

defendant's testimony suggests that he believed himself innocent of the aggravated assault of the victim. Thus, this factor weighs against the defendant.

The record establishes that the defendant entered his plea at the same time his codefendants also pleaded guilty. The trial court conducted individual colloquies with each defendant, and the defendant's responses evinced an understanding of the charges against him as well as the process for entering the pleas. The defendant, who was represented by counsel throughout the proceedings, indicated that he did not agree completely with the State's recitation of facts but that he believed pleading guilty to be in his best interest. Indeed, at the hearing on the defendant's motion to withdraw his plea, defense counsel stated that the defendant had entered the plea against his advice. Although the defendant now contends that his codefendants coerced him into entering the plea, the defendant told the trial court during the plea colloquy that no one had exerted any pressure on him to plead guilty. The circumstances of the plea weigh against permitting the defendant to withdraw his plea.

The record establishes that the defendant had a lengthy criminal history, evincing his experience with the criminal justice system. The defendant was fully aware of the plea process and the consequences of entering a guilty plea because he had done so before. Additionally, the defendant admitted that he knew the terms of his own plea agreement as well as the agreements entered into by his codefendants before he entered the plea in this case. Thus, the defendant's nature and background and his extensive experience with the criminal justice system weigh against permitting the defendant to withdraw his plea.

Because each of the relevant factors weighs against permitting the defendant to withdraw his plea, we conclude that the defendant failed to establish a fair and just reason that he should be permitted to do so. Thus, the trial court did not err by denying the defendant's motion to withdraw his plea.

*II. Sentencing*

The defendant contends that the trial court erred by ordering him to serve the six-year sentence imposed in this case consecutively to the eight-year sentence imposed for his prior conviction of aggravated burglary. The State asserts that the trial court did not err.

At the sentencing hearing, Metropolitan Police Department Officer Derek Smith testified that on July 17, 2011, he arrested the defendant, Mr. McCoy, and Mr. Ashworth after they assaulted the victim. Officer Smith said that Mr. Ashworth admitted "curb stomping" the victim as he lay unconscious on the ground.

The State exhibited to the hearing the victim's medical records and

-6-

photographs of the victim's injuries. The medical records confirmed that the victim suffered a skull fracture, traumatic brain injury, and "significant intracranial head injuries."

The defendant testified that he was not drinking alcohol or using drugs on the night of the offense. He said that Mr. Ashworth and the victim got into an altercation inside a night club, resulting in all the parties being ejected from the club. The defendant said that the victim and his friends were waiting for him and his friends when they exited the club and that "words was exchanged" outside the club. He testified that the victim called Mr. Ashworth names. He said that police officers broke up this second altercation, but the victim again followed the defendant and his friends as they walked to their car. At some point, the victim tried to hit Mr. Ashworth with a bottle and succeeded in knocking Mr. Ashworth to the ground. The defendant said that he believed the victim "was fixin to stomp [Mr. Ashworth]," so he hit the victim, knocking him to the ground. He then ran away from the scene to escape police.

The defendant admitted that he was serving an eight-year term of probation for a conviction of aggravated burglary at the time of the offense. He said that his probation was revoked following his arrest in this case and that he had been incarcerated at the time of the sentencing hearing for "probably like 16, 17 months." The defendant testified that during this period of incarceration, he had availed himself of a number of programs offered by the Department of Correction, including anger management classes.

The defendant acknowledged that he was a Range II offender for both the aggravated assault conviction in this case and the aggravated burglary conviction for which he was on probation at the time of the offense. He said that he had served "55 months in all to flatten" his sentences on prior drug-related convictions. He asked the trial court to order the six-year sentence imposed in this case to be served concurrently to the eight-year sentence so that he could "just go ahead and get all this behind" him.

During cross-examination, the defendant denied telling the preparer of the presentence report that he used alcohol, marijuana, cocaine, and codeine on a daily basis at the time of the offense and that the only time he was sober was when he was asleep. He admitted that he had filled out a questionnaire after entering his pleas. He acknowledged, upon questioning by the trial court, that he had provided the information regarding his prior drug use on that written form.

Upon further questioning by the court, the defendant admitted that he pleaded guilty to aggravated burglary in 2008 pursuant to a plea agreement that included dismissal of charges of especially aggravated kidnapping and aggravated assault. He violated the terms of his probation in 2010 by possessing drugs and drug paraphernalia.

At the conclusion of the hearing, the trial court noted that the defendant's presence in the night club was itself a violation of his probation. The court observed that the defendant had four prior felony convictions and 15 prior misdemeanor convictions. He violated the terms of his probation in different cases on five separate occasions. The court determined that the defendant's criminal history, failures at probation in the past, and the fact that he was on probation when he committed the offense in this case warranted the imposition of a fully incarcerative sentence to be served consecutively to his previously-imposed eight-year sentence.

When a defendant is convicted of multiple crimes, the trial court may order the sentences to be served consecutively if it finds by a preponderance of the evidence that "[t]he defendant is sentenced for an offense committed while on probation." T.C.A. § 40-35-115(b)(6).

In our view, the record supports the sentencing decision of the trial court. The 28-year-old defendant, a high school dropout, had numerous criminal convictions spanning more than a decade. The presentence report established that the defendant had violated his probation five times in the Davidson County Criminal Court and three times in the Davidson County General Sessions Court. The defendant was less than honest about his prior drug and alcohol use. Most importantly, the defendant was serving an eight-year term of probation at the time he committed the offense in this case.

## III. Conclusion

The trial court did not err by denying the defendant's motion to withdraw his guilty plea or by ordering the six-year sentence imposed in this case to be served consecutively to the previously-imposed eight-year sentence. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE