# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 13, 2016 Session

## STATE OF TENNESSEE v. TERRY L. BRAZZELL

### Appeal from the Circuit Court for Dickson County
### No. 22CC-2013-CR-749    David Wolfe, Judge

---

### No. M2016-00603-CCA-R3-CD – Filed November 17, 2016

---

In this appeal, the defendant, Terry L. Brazzell, challenges the denial of his pre-sentencing motion to withdraw his guilty plea to one count of vehicular homicide and challenges his Range II, 20-year sentence imposed for that conviction.  Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Olin J. Baker and William Walker Wade, Charlotte, Tennessee (on appeal and motion to withdraw plea); and Jake Lockert, District Public Defender, for the appellant, Terry L. Brazzell.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Jack Arnold, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Dickson County Grand Jury charged the defendant via presentment with one count of vehicular homicide; second offense driving under the influence ("DUI"); felony reckless endangerment; simple possession of marijuana; simple possession of Clonazepam, a Schedule IV controlled substance; simple possession of Carisoprodol, a Schedule IV controlled substance; simple possession of Diazepam, a Schedule IV controlled substance; simple possession of morphine, a Schedule II controlled substance; sixth offense driving while his license was revoked; failure to obey a traffic control device; and failure to comply with the financial responsibility law arising out of a car accident caused by the defendant on December 5, 2013.  In exchange for the

State's agreement to dismiss the remaining charges, the defendant entered a plea of guilty as a Range II offender to vehicular homicide with the sentence to be determined by the trial court. At the November 16, 2015 guilty plea submission hearing, the prosecutor submitted the following factual basis for the defendant's guilty plea:

> Your Honor, on or about December 5, 2013, the [d]efendant was driving here in Dickson County. Due to a large number of primarily prescription medications in the [d]efendant's system, he nodded off, ran through a stop sign and hit the vehicle of Freddie Patterson, killing her.

At the conclusion of the hearing, the court, with the agreement of the parties, scheduled the sentencing hearing for December 21, 2015.

On December 9, 2015, the defendant's original counsel filed a motion to withdraw, citing as grounds that a witness to be called by the State at the sentencing hearing was "a longtime client of the Public Defender's Office." At some point, the trial court appointed substitute counsel and, following a request from substitute counsel, reset the sentencing hearing for March 4, 2016. On March 3, 2016, the defendant filed a motion pursuant to Tennessee Rule of Criminal Procedure 32(f)(1) to withdraw his guilty plea. As grounds for his motion, the defendant asserted his "possible mental health issues and lack of understanding of his plea."

In its answer to the defendant's motion to withdraw his plea, the State observed that the defendant had waited until the day before the sentencing hearing to file his motion and that he had failed to establish a valid reason for failing to file sooner. The State also observed that the defendant had not asserted or maintained his innocence, that the trial court had thoroughly explained the terms of the plea to the defendant during the plea colloquy, that the transcript of the colloquy indicated that the defendant understood the terms of the plea and its ramifications, and that the defendant's lengthy criminal history evidenced his familiarity with the criminal justice system.

The trial court denied the defendant's motion to withdraw his plea after a hearing on March 4, 2016. On that same date, the trial court, after conducting a sentencing hearing, imposed a Range II sentence of 20 years for the defendant's conviction of vehicular homicide.

The defendant filed a timely notice of appeal, challenging both the trial court's denial of his motion to withdraw his guilty plea and the imposition of a 20-year sentence.

*I. Motion to Withdraw Guilty Plea*

The defendant first asserts that the trial court abused its discretion by denying his motion to withdraw his guilty plea. The State contends that the trial court properly denied the motion.

At the March 4, 2016 hearing on the defendant's motion, the defendant's substitute counsel stated that he received notice of his appointment to the case on December 11, 2015. Just over a month later, he requested the discovery materials from the defendant's original counsel. Around that same time, substitute counsel moved for a continuance of the sentencing hearing and asked for and received funds to hire an investigator. Substitute counsel said that he received discovery materials from original counsel on January 30 and February 12, 2016. He said that he met with the defendant on March 3, 2016, to review the discovery materials and to discuss materials provided by the investigator. Substitute counsel opined "that there is defense for mental culpability in this case" and speculated "whether we may need a psych eval for some competency issues." Counsel said that because of the potential for a mental health defense, he informed the defendant that "it would be prejudicial to go forward." The defendant then decided, with the advice of counsel, to move the court to withdraw his plea.

The defendant testified that on the day he entered his guilty plea, he understood that "there was a chance" that he would "be entering a plea that day" and that he had discussed pleading guilty with his original counsel. The defendant understood that he "could plead guilty in open court and they would decide the sentence later" but that he would "be pleading at 35 percent." He said that he did not have a great deal of time to discuss the plea with his counsel and insisted that he "felt under a lot of pressure" because the State had made a previous plea offer that included a sentence of "30 years at 45 percent." He said that, in light of the State's previous offer, he felt he had no choice but to plead guilty. The defendant said that he and original counsel had discussed potential defenses but that original counsel had failed to conduct any real investigation into the case.

The defendant claimed that he had first been diagnosed with bipolar disorder in 1977 and that the diagnosis was confirmed in 2010. He said that he could read, but because he had only a seventh-grade education, he was unable to understand the plea documents. He said that original counsel did not adequately explain the ramifications of his pleading guilty. He added that he did not "remember a whole lot much about" entering his plea.

During cross-examination, the defendant acknowledged that he had rejected an earlier plea offer from the State. He also admitted that he had previously entered

guilty pleas to felony offenses on two ocassions and to misdemeanors on "four or five" occasions. He conceded that his mental health issues were the same when he entered those pleas as they were when he entered the plea in this case.

When asked whether he did not understand that he was entering a plea in exchange for a Range II sentence of 12 to 20 years, the defendant said,

> I'm not necessarily saying I didn't understand it. I'm saying I felt like I was rushed into it, for the simple fact that I couldn't – I didn't – the representation and the lady not going and trying to find my witnesses and everything. You know, if I couldn't have nobody to testify for me or anything, you know, what was I going to do.

The defendant acknowledged that the plea documents indicated that he would be subject to a Range II sentence of 12 to 20 years and that the trial court told him the same thing during the plea colloquy. He admitted that an employee of the public defender's office told him that he was a Range II offender. Eventually, the defendant conceded on cross-examination that he was fully aware prior to entering his plea that he would be sentenced as a Range II offender. He explained,

> Ms. Donegan came to me over there at the jail and told me that if I would enter a guilty plea in open court, I'd be sentenced as a Range II offender. The Judge wouldn't give me eight years, probably wouldn't give me ten years. I'd probably get 12 years.

He also conceded that he was aware that the State had alleged that he was under the influence of prescription medication at the time of the accident that caused the victim's death, saying, "I didn't agree with it, but I heard it . . . ." The defendant conceded that he made an unprompted admission of guilt to the offense of vehicular homicide during the colloquy, despite that he had intended to enter a best interests plea.

The defendant testified that he wanted to withdraw his plea as soon as he realized that original counsel was withdrawing from his case, but he did not say anything in court on the day that the court heard original counsel's motion to withdraw because he "was so confused and dumbfounded" that he did not "even know what day it was." He said that he first spoke to a member of substitute counsel's staff "three or four weeks" before the March 4 hearing and that he expressed a desire to withdraw the plea at that time.

-4-

The defendant insisted that he had been "pressured into taking the plea" but acknowledged that he told the trial court that he had not been pressured. He also maintained that he signed the plea documents without reading them. He claimed that original counsel and the original investigator "could have put a little bit more effort forth to try and get . . . witnesses and everything." He also claimed that he believed that he "had a seizure during this episode, and they just never would try to get nobody to help back me up on that." He admitted, however, that original counsel contacted Southern Hills Hospital as the defendant had directed but found no record of the defendant's having been admitted for seizure activity.

Upon questioning by the court, the defendant acknowledged that he entered pleas of guilty to felony offenses on at least four separate occasions between 1986 and 2008.

Greg Proctor, an inmate at the Dickson County Jail who had been incarcerated in the same pod as the defendant, testified that he wrote a letter to the district attorney's office after having a conversation with the defendant. Mr. Proctor said that the defendant told Mr. Proctor "that he had never been treated or had seizures" but that he had done legal research and decided "that that was probably the only other way of getting out of his charge, was if he had a seizure." Mr. Proctor admitted during cross-examination that he wrote the letter to the district attorney's office with the hope that it would aid him in obtaining a medical furlough. He said that he had been granted a five-hour furlough to apply for drug rehabilitation but that it did not come as a result of the letter. On redirect examination, Mr. Proctor complained that the district attorney's office had not contacted him at all after he wrote the letter. He said that no one from the district attorney's office had made him any offers or arrangements in exchange for his testimony. He added that writing the letter and testifying in the defendant's case had caused him "a lot of problems in jail."

At the conclusion of the hearing, the trial court concluded that "clearly" the defendant's guilty plea "was voluntary." The court found that the defendant "admitted he understood he was getting a 35 percent release eligibility date, and he understood that he was pleading to vehicular homicide." The court determined that the defendant knew that the sentencing range was 12 to 20 years. The court found that original counsel had engaged in extensive motion practice in preparation for the defendant's trial and that four subpoenas had been obtained for defense witnesses. The trial court observed that the defendant "was very well experienced in [c]ourt" and that he had "appeared numerous times before a [j]udge." The court found that there was no evidence that the defendant had been coerced to enter the plea, noting that the defendant "admitted that he wasn't," and concluded that there was no "problem with his understanding of the rights."

The trial court also noted that, in exchange for the defendant's single plea of guilty to a "very straightforward" case of vehicular homicide, the State dismissed the other 10 counts of the indictment in this case as well as both counts of a two-count indictment in an unrelated case. The court found that the defendant had presented no evidence to support his claim that he was bipolar. The court "accepted" Mr. Proctor's "testimony . . . for what it is." Ultimately, the court ruled that none of the factors "weigh in favor of withdrawing the plea." Specifically, the court found that a "number of weeks" had elapsed between the entry of the plea and the motion to withdraw; that the defendant had offered "no valid reasons . . . for . . . the failure to move to withdraw the plea at any earlier proceedings"; that the defendant had not maintained his innocence and had, in fact, "volunteered in the plea [colloquy] that he was guilty of vehicular homicide"; that the record established "that not only was [the defendant] in possession of pills, that he had hidden a bottle of methadone pills . . . in his rectum at the time he arrived at the jail, and he had possession of marijuana"; that the defendant "was well experienced with the criminal justice system, had other occasions where he was coming to Court and backed out the plea as the proof has established"; and that the defendant "clearly . . . knew how the system works." The court did not consider a seventh factor, "'the potential prejudice to the government if the [plea] is withdrawn,'" deeming consideration of that factor unnecessary in light of the other factors' overwhelmingly aligning against the defendant.

The decision to permit a defendant to withdraw his plea "is a matter addressed to the sound discretion of the trial court, regardless of when the motion is filed." *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005); *see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010); *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). Generally, "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *Phelps*, 329 S.W.3d at 444 (citing *Crowe*, 168 S.W.3d at 740; *Mellon*, 118 S.W.3d at 345); *see also State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Although the trial court "'should always exercise [its] discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial,'" *Phelps*, 329 S.W.3d at 444 (quoting *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)), "the defendant bears the burden of establishing sufficient grounds for withdrawing his plea," *Phelps*, 329 S.W.3d at 444 (citing *Turner*, 919 S.W.2d at 355).

Rule 32(f) of the Tennessee Rules of Criminal Procedure provides that the trial court "may grant a motion to withdraw a guilty plea for any fair and just reason" prior to sentence imposition, Tenn. R. Crim. P. 32(f), and our supreme court has utilized the federal interpretation of the phrase "any fair and just reason," *Phelps*, 329 S.W.3d at 445. Under that adaptation, the court adopted a multi-factor analysis for determining whether the defendant should be permitted to withdraw his plea before the sentence has been imposed. Among the non-exclusive factors that the court must consider are:

"(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted."

*Phelps*, 329 S.W.3d at 446 (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)). The supreme court specifically held that, in the case of a motion to withdraw a plea filed prior to sentencing, "where a trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a 'change of heart.'" *Phelps*, 329 S.W.3d at 448.

In this case, the defendant filed the motion to withdraw his plea on March 3, 2016, nearly four months after he entered the plea on November 16, 2015, far in excess of the period of time that the *Phelps* court deemed "a significant length of time" that weighed against permitting withdrawal of the plea. *Id.* at 449. To explain this lapse of time, the defendant pointed to the change in his counsel, but the record establishes that the change in counsel occurred almost three months before the defendant filed his motion to withdraw. The defendant's failure to account for the lapse of time between the change of counsel and the motion to withdraw weighs against permitting withdrawal of the plea.

Although the defendant claims in his brief that he had maintained his innocence throughout the proceedings, the record establishes that the defendant candidly admitted during the plea colloquy that he was guilty of "vehicular homicide." His insistence that he was not guilty of driving under the influence appears to be attributable to the defendant's claim that he was not drunk. In our view, this factor weighs against the defendant.

The transcript of the guilty plea submission hearing shows that the trial court conducted a thorough colloquy with the defendant, and the defendant's responses evinced his understanding of the charges against him as well as the process for entering the plea. The defendant, who was represented by counsel throughout the proceedings, indicated that he understood that he was pleading guilty to vehicular homicide in

-7-

exchange for a Range II sentence of 12 to 20 years and the State's agreement to dismiss the remaining charges against him. At the hearing on the motion to withdraw his plea, the defendant admitted that he understood the terms of the plea agreement and that he had not been coerced into entering the plea. The circumstances of the plea weigh against permitting the defendant to withdraw his plea.

The record establishes that the defendant had a lengthy criminal history, evincing his experience with the criminal justice system. The defendant was fully aware of the plea process and the consequences of entering a guilty plea because he had done so before. Although the defendant claimed that his history of mental illness prevented his understanding the plea process, he presented no evidence to substantiate his claim. Under these circumstances, the defendant's nature and background and his experience with the criminal justice system weigh against permitting the defendant to withdraw his plea.

Because each of these relevant factors weighs against permitting the defendant to withdraw his plea, we conclude that the defendant failed to establish a fair and just reason that he should be permitted to do so. Thus, the trial court did not err by denying the defendant's motion to withdraw his plea.

## II. Sentencing

The defendant claims that the trial court abused its discretion by imposing a sentence of 20 years, the maximum within the range, for the defendant's conviction. The State avers that the sentence is appropriate given the magnitude of the crime and the defendant's lengthy criminal history.

Immediately following the denial of the defendant's motion to withdraw his guilty plea, the court held a sentencing hearing.

Stephanie Ellis Herndon, who prepared the presentence investigation report, testified that the defendant became "tearful" when she mentioned the victim's name but that he nevertheless declined to provide any statement about the offense. The defendant also "became very tearful" when Ms. Herndon asked about any abuse he may have suffered during his life. The defendant "did say that he was abused by a family member, but would not discuss who it was, what kind of abuse, or any information about it." The defendant told Ms. Herndon that he first used alcohol at age 20 and that "he would typically drink once or twice per week." Although he denied having committed any alcohol-related crimes and insisted that he "quit drinking alcohol because he did not like it," the presentence report established that the defendant had been previously

convicted of DUI. The defendant admitted smoking marijuana on a weekly basis until 2011.

Ms. Herndon identified certified copies of the defendant's convictions dating back to the 1980s, several of which were felony convictions.

Delores Mullins, the victim's sister, testified on behalf of the victim's family about the impact on the family of the victim's death. She said that the victim was killed approximately one mile from her house. She asked the court to "show no mercy" when sentencing the defendant.

Stuart Goodwin testified that he was driving behind the victim when he saw the accident happen. He said that the victim was traveling at approximately 50 miles per hour when the defendant's car "came through the stop sign, never hit the brakes and broadsided her. And she hit the guardrail and bent it." He estimated that the defendant's vehicle was traveling at 45 to 50 miles per hour. Mr. Goodwin went to render aid to the victim, but he "could tell she was passed." He then went to check on the defendant and his passenger. Mr. Goodwin recalled that he asked the defendant if he was okay, and the defendant responded, "yeah, what happened. And I told him, you ran the stop sign and hit somebody. He said, well, I didn't see them." Mr. Goodwin testified that the defendant's passenger kept trying to light a cigarette despite the strong smell of gasoline. Eventually, Mr. Goodwin "ended up taking the lighter and cigarette away from her."

Tennessee Highway Patrol Officer Harold Stewart, a member of the Critical Response Team who was called to investigate the collision, testified as an expert in accident reconstruction. He said that he concluded that the defendant's vehicle "failed to stop at that stop sign, colliding with the right front left corner panel of the vehicle, subsequently ejecting the victim through the driver's side window and down the fog line where she came to final rest against the passenger side of her own vehicle." He said that the defendant did not apply his brakes before his vehicle struck the victim's vehicle. The impact of the crash "was so severe that it removed the hood from [the defendant's] vehicle and caused it to go down into the ditch line ravine there across the guardrail."

Tennessee Highway Patrol Officer John Mark Tarr interviewed the defendant at Vanderbilt Hospital following the crash. The defendant told Trooper Tarr that he had taken "Oxycodone, Soma, and Morphine, Valium." Upon inspecting the defendant's clothing, Trooper Tarr discovered more pills and a canister of "a green leafy substance, what I know as marijuana." The defendant consented to having his blood drawn for testing. Trooper Tarr left the defendant's room to secure the evidence and speak with another officer. Shortly thereafter, he was called back into the defendant's room, where he learned that an x-ray of the defendant's pelvis had revealed a metal

canister in the defendant's rectum. At that point, the doctor asked the defendant to remove it, but he was unable to do so. Trooper Tarr and another trooper then assisted the doctor by restraining the defendant while the doctor removed the bottle. The defendant told Trooper Tarr that he had placed the bottle, which contained pills, in his rectum because "he didn't want his roommates to get it."

Jake Lockert, the defendant's original counsel, testified that the defendant became tearful "[a]lmost every single time" the two met to discuss the case. He said that the defendant "was so torn up that he couldn't view discovery," that he "begged not to" discuss "taking the case to trial," and "he just cried and said he didn't want to put the family through a trial."

The defendant's brother, Kenneth Brazzell, testified that the 55-year-old defendant had expressed remorse for the accident, saying, "I'm just as sorry as I can be." Mr. Brazzell said that their father was an alcoholic who sometimes beat the defendant with a belt and that their mother "was a little bit of a wild woman sometimes." He described their upbringing as "rough." He said that the defendant was "a very good hearted person" who had taken to "running with the wrong people." He said that the defendant did not drink alcohol but had been obtaining pills from a pain management clinic. He acknowledged that the defendant had been "in and out of trouble since he was a teenager."

The defendant's brother, Stephen Brazzell, also testified that the defendant had expressed remorse for the victim's death. He said it was he who broke the news of the victim's death to the defendant and that the defendant "just cried and broke down."

The trial court applied enhancement factors (1) that the defendant had a previous history of criminal convictions in excess of those necessary to establish his sentencing range; (8) that the defendant had previously failed to comply with the conditions of a sentence involving release into the community; and (10) that the defendant had no hesitation about committing a crime when the risk to human life was high. *See* T.C.A. § 40-35-114(1), (8), (10). Regarding the defendant's criminal history, the trial court rejected the defendant's claim that he "really hasn't been in a whole lot of trouble," citing the fact that, despite serving two lengthy prison sentences, the defendant had "continued to violate the law on a regular basis," racking up a number of misdemeanor convictions. The court found that "the history in this case and the record in this case reflects that [the defendant] has engaged in a lifetime of conscious and intentional disregard for the laws of the State of Tennessee."

The court found no mitigating factors applicable, specifically concluding that "no evidence . . . indicate[s] that the [d]efendant's health issues played a role" in the

offense, that "[i]t really doesn't matter whether" the defendant had been prescribed the medications found in his system following the accident, and that the record did establish a sustained intent to violate the law. The court also found that neither the defendant's expression of remorse nor his rough upbringing should mitigate the sentence. The court found "dubious at best" the defendant's claim that the sentence should be mitigated because the defendant pleaded guilty out of a desire to spare the victim's family the pain of a trial. The court also found the defendant's claimed history of mental illness to be wholly unsupported by the evidence in the record.

Based upon these findings, the court imposed a sentence of 20 years' incarceration, the maximum within the range.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

In our view, the record supports the sentencing decision of the trial court. The 55-year-old defendant had an extensive criminal history dating back into the early 1980s that included felony convictions involving lengthy periods of incarceration. The record established that the defendant, whose driver's license had been revoked for years by the time of the crash, elected to get behind the wheel under the influence of, by his own admission, several different prescription medications. He drove through a stop sign without applying his brakes, crashing into the victim's vehicle so hard that the victim was ejected onto the roadway. When he arrived at the hospital, the defendant had more pills in a prescription bottle, marijuana inside a canister, and a canister of pills hidden inside his rectum. As the trial court noted, the defendant was already granted leniency in the form of the State's agreement to dismiss all but one count of the indictment in this case as well as both counts of a two-count indictment in an unrelated case. This court has previously recognized that leniency in the terms of a plea agreement may support the imposition of a formidable sentence. *See, e.g.*, *State v. John Clayton Fields*, No. M2014-

01691-CCA-R3-CD (Tenn. Crim. App., Nashville, July 6, 2015), *perm. app. denied* (Tenn. Oct. 23, 2015); *State v. Krystal Bowman*, No. E2011-01906-CCA-R3-CD (Tenn. Crim. App., Knoxville, Aug. 13, 2012); *State v. Larry J. Coffey, Jr.*, No. E2008-00087-CCA-R3-CD (Tenn. Crim. App., Knoxville, Feb. 18, 2009). Under these circumstances, the trial court did not abuse its discretion by imposing the maximum sentence for the defendant's conviction of vehicular homicide.

### III.  Conclusion

Based upon the forgoing analysis, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE