IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 2003 Session

## STATE OF TENNESSEE  v.  JAMES A. MELLON

**Appeal from the Court of Criminal Appeals, at Knoxville**
**Criminal Court for Knox County**
**No. 64113B     Hon. Mary Beth Leibowitz, Judge**

---

**No. E1999-01505-SC-DDT-DD - Filed October 30, 2003**

---

Although the defendant, James A. Mellon, raises numerous issues on appeal, the dispositive issue is whether his guilty plea was unknowing and involuntary, and the subsequently imposed death sentence in violation of due process, when he was not adequately informed of the consequences should he breach the plea agreement.  Prior to trial, the defendant pleaded guilty to felony murder and especially aggravated robbery as part of a plea agreement with the prosecution.  The agreement provided that, in exchange for his pleas of guilty, the State would recommend a sentence of life in prison with the possibility of parole on the felony murder conviction and a concurrent sentence of fifteen to twenty-five years for the especially aggravated robbery conviction, with the trial court to decide the actual length of the sentence.  Pursuant to the agreement, sentencing would be reserved until after testimony by the defendant in any related proceeding or at the conclusion of such proceedings.  The defendant reneged on the agreement and instead moved to withdraw his guilty pleas.  The trial court denied the defendant's motion and empaneled a jury.  A sentencing hearing was conducted, resulting in a sentence of death.  The Court of Criminal Appeals affirmed the conviction and death sentence for the felony murder.  On automatic appeal to this Court, we conclude that the defendant was not adequately informed of the consequences if he should breach the plea agreement.  We are constrained to hold that the defendant's pleas were not knowingly and voluntarily entered, and thus the subsequent sentence  denied him due process of law.  Therefore, we reverse the decision of the Court of Criminal Appeals and remand to the trial court for further proceedings consistent with this opinion.

**Automatic Appeal pursuant to Tennessee Code Annotated § 39-13-206(a)(1);**
**Judgment of the Court of Criminal Appeals is reversed and remanded.**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., E. RILEY ANDERSON, ADOLPHO A. BIRCH, Jr., and JANICE M. HOLDER, JJ. joined.

1

Gerald L. Gulley, Jr., Knoxville, Tennessee, and Tim S. Moore, Newport, Tennessee, for the appellant, James A. Mellon.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Marvin S. Blair, Jr., Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

In the early morning hours of August 24, 1997, Robert Scott Loveday was robbed and murdered while stopped at a pay phone outside a service station in Farragut, Tennessee. Loveday was found shot twice in the chest, and the robbers had taken his watch and a one-dollar bill. Following the police investigation, the defendant and three others, Anthony Jones, David Jones, and Ernest Rogers, were arrested and charged in connection with the robbery/murder. The police investigation also revealed that approximately one hour before the fatal shooting of Loveday, the defendant Mellon had used a handgun to rob Matthew James Miller in a Lowe's parking lot.

On August 26, 1997, Anthony Jones told police that he was the one who shot Loveday after seeing something "gleaming" in his hand. Anthony Jones pleaded guilty to felony murder in exchange for a sentence of life imprisonment without the possibility of parole and to especially aggravated robbery for a consecutive sentence of twenty-five years.

The defendant Mellon was indicted on four counts: (1) first degree premeditated murder of Loveday; (2) felony murder during the perpetration of the aggravated robbery of Loveday; (3) felony murder during the perpetration of the robbery of Loveday; and (4) especially aggravated robbery of Loveday. Although the defendant had been reluctant to plead guilty, following counseling with a defense investigator, he appeared before the Criminal Court of Knox County and entered pleas of guilty to first degree felony murder during the perpetration of aggravated robbery, and to especially aggravated robbery. In exchange for his guilty pleas, the State agreed to recommend a sentence of life with the possibility of parole for the felony murder conviction and a concurrent sentence of twenty-five years for the especially aggravated robbery conviction, provided that the defendant testify truthfully against his co-defendants.

Specifically, the plea agreement provided: "Defendant agrees that he will, if called upon, testify truthfully in any other proceeding in connection with this incident. Said testimony will be consistent with the statements defendant made to Knox County Sheriff's Department officers. Sentencing in this case is reserved."

Before accepting his pleas of guilty, the trial court reviewed the guilty pleas with the defendant to confirm that he was entering them voluntarily and knowingly. The colloquy between the Court and Mellon was, in pertinent part, as follows:

2

THE COURT: . . . First, do you understand, sir, that you are entering a plea of guilty in the second count of the indictment to felony murder . . . . [T]he State had requested the death penalty in this case, the recommended sentence, however, is life with the possibility of parole. It is not a promise of parole but you certainly would become eligible for parole and would go up for parole. And that would be served consecutively to the sentence you've received already in 64114.[1]

In the fourth count of the indictment you would be pleading guilty to especially aggravated robbery, wherein you are a Range I Standard Offender, and the range of punishment for that is fifteen to twenty-five years.

There is no agreement. It would be a sentence that I would impose, and make a decision as to what the sentence would be. But it would be agreed that that would be a sentence concurrent with the felony murder sentence.

Do you understand that so far, sir?

MR. MELLON: Yes, Your Honor.

THE COURT: And do you understand, sir, that until . . . we've got to the point of testimony, or conclusion of the cases of the co-defendants . . . sentencing will be reserved, and you will wait for sentence, and it is agreed further that you will testify truthfully and consistently with the statements that you previously made?

Do you understand all that, sir?

MR. MELLON: Yes, Your Honor.

The Court accepted the guilty pleas of Mellon on the two counts.

When the time came for the trial of co-defendant Ernest Rogers, the defendant refused to testify. In the meantime, the defendant filed two pro se motions to dismiss counsel. On January 19, 1999, those motions were denied. At the hearing on those motions, defense counsel filed a motion asking that the defendant be allowed to withdraw his pleas of guilty because of the defendant's fear that he would be harmed if he testified against any of his co-defendants. At the hearing, the defendant claimed that he had not understood that he was to testify against all his co-defendants but thought that he was required to testify only against Anthony Jones. He acknowledged, however, that he did not intend to testify against any of his co-defendants, including Anthony Jones. The defendant claimed that he had been pressured by the defense investigator to accept the plea agreement, even though he repeatedly had expressed a desire not to plead guilty. He also complained that he was not allowed to talk with his mother before accepting the plea bargain.

---

[1] The defendant had already been sentenced in connection with the robbery of Mr. Matthew Miller.

The motion to withdraw the pleas was accompanied by an affidavit by Brandt Davis, lead counsel for the defendant. Mr. Davis stated that prior to the entry of the pleas, the defendant expressed to both of his lawyers his reluctance to testify against any co-defendants in any of the pending cases because he was afraid of what might happen to him in prison if he were labeled a "snitch" as the result of such testimony. This reluctance continued until the morning of October 8, 1998, although he was willing to otherwise accept the offer made by the State. Upon being told the plea offer would be withdrawn by the State if not accepted that morning, the defendant met with the defense investigator, and later with both defense counsel, and ultimately agreed to accept the plea agreement. Counsel further stated that following the entry of his guilty pleas, Mellon advised him that he felt threatened by Anthony Jones as a result of his agreement to testify.

When the motion to withdraw the pleas was argued before the trial court, the prosecutor questioned Mellon regarding his understanding of the plea agreement.

Q.    Mr. Mellon, you understood that you were pleading guilty to the offense, and that the only thing that was being reserved was the right of sentence? Whether you would be sentenced to life with parole, life without parole, or death?

And on the especially aggravated robbery that you would be sentenced to fifteen to twenty-five years?

You understood that those two things were specifically reserved, didn't you?

A.    No, I understood that the plea agreement was life with parole which was fifty-one years, with the especially aggravated robbery ran concurrent and twelve years run consecutive.

Q.    And that that sentence recommendation was conditioned upon your testifying?

A.    Correct.

Q.    That the sentencing recommendation had nothing to do with your entering the plea of guilty?

A.    I don't understand that. Could you clarify it?

Q.    That your sentencing recommendation had nothing to do with your entering the plea of guilty to first degree murder or to especially aggravated robbery. It was strictly based on whether or not you would testify?

A.    Yes.

4

The trial court denied the defendant's motion to withdraw his pleas, finding that they had been entered voluntarily and knowingly.

The case proceeded to a jury sentencing hearing with death, life without the possibility of parole, and life with the possibility of parole all possible sentences. The jury found one aggravating circumstance beyond a reasonable doubt - that "[t]he defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person." Tenn. Code Ann. § 39-13-204(i)(2) (Supp. 1996). The jury concluded that this aggravating circumstance outweighed the mitigating evidence offered by the defendant and sentenced the defendant to death.

The Court of Criminal Appeals affirmed the conviction and sentence of death for the felony murder. The case was then automatically docketed in this Court pursuant to Tennessee Code Annotated section 39-13-206(a)(1).

**DISCUSSION**

Although the defendant has raised numerous issues, the dispositive issue is whether due process requires that he be permitted to withdraw his guilty pleas and stand trial on the original counts of the indictment. Specifically, the question is whether the defendant's guilty pleas were knowing and voluntary when, although he was told and understood that he was entering pleas of guilty to felony murder and especially aggravated robbery, and although he was fully cognizant that he was required to testify truthfully if called upon at the trials of his co-defendants, he was not notified of the consequences if he breached the agreement by failing to testify. We hold that the trial court erred in denying the defendant's motion to withdraw his pleas of guilty. Because the plea agreement did not adequately inform the defendant of the consequences of a breach, the pleas were not knowing and voluntary. To proceed to a capital sentencing hearing under these circumstances deprived the defendant of the due process of law guaranteed to him under both the federal and state constitutions. Accordingly, we reverse and remand to the trial court for trial on the issues of guilt and punishment, if necessary.

One of the fundamental requirements for a plea of guilty to comport with constitutional principles is that the accused enter the plea knowingly and voluntarily. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). If a plea is not knowing and voluntary, then due process has been denied. See McCarthy v. United States, 394 U.S. 459, 466 (1969); State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991).

To understand what is meant by a "knowing and voluntary" plea, it helps to understand the nature of a guilty plea. A plea of guilty is certainly a confession, but it is more than that; it is itself a conviction. Boykin v. Alabama, 395 U.S. at 242. In the process of entering a guilty plea in a criminal trial, the defendant necessarily waives several constitutional rights, including the privilege against self-incrimination, the right to a trial by jury, and the right to confront his accusers. "For this waiver to be valid under the due process clause of the Fourteenth Amendment, it must be 'an

intentional relinquishment or abandonment of a known right or privilege.'" State v. Mackey, 553 S.W.2d at 340 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). In addition, "a guilty plea 'is not deemed voluntary where the person entering it does so without understanding of the consequences of his plea.'" United States v. Stubbs, 279 F.3d 402, 411 (6th Cir. 2002) (quoting Smith v. United States, 400 F.2d 860, 862 (6th Cir. 1968)). Certainly, a plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

We cannot presume that the defendant voluntarily relinquished such fundamental rights. State v. Blackmon, 984 S.W.2d 589, 591 (Tenn. 1998) (citing Boykin v. Alabama, 395 U.S. at 242 (1969)). Instead, "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" State v. Mackey, 553 S.W.2d at 340; see also State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). "In order to find that the plea was entered 'intelligently' or 'knowingly,' Boykin requires that the trial court 'canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences.'" Blankenship v. State, 858 S.W.2d at 904 (quoting Boykin v. Alabama, 395 U.S. at 244) (emphasis omitted).

A plea of guilty once entered cannot later be withdrawn as a matter of right. See State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995) (citing State v. Anderson, 645 S.W.2d 251, 253-54 (Tenn. Crim. App. 1982)). Whether the defendant should be permitted to withdraw his plea is a question that is addressed to the sound discretion of the trial court. Henning v. State, 201 S.W.2d 669, 671 (Tenn. 1947); State v. Turner, 919 S.W.2d at 355. However, when a constitutional violation is shown, the trial court's discretion is "strictly curtailed." State v. Davis, 823 S.W.2d at 220 (Tenn. Crim. App. 1991) (citing United States v. Read, 778 F.2d 1437, 1441 (9th Cir. 1985)).

It has long been held that because they implicate the waiver of fundamental rights, plea agreements must be evaluated with reference to the requirements of due process. See Brady v. United States, 397 U.S. 742, 748 (1970). For example, a defendant may not, consonant with due process guarantees, be held to his negotiated plea of guilty when the promises upon which it was based remain unperformed by the prosecution. See Santobello v. New York, 404 U.S. 257, 262 (1971); Metheny v. State, 589 S.W.2d 943, 945 (Tenn. Crim. App. 1979).

Some courts, in addressing breach of plea agreements, have applied principles of contract law to construe the agreement and determine the appropriate remedy. See, e.g., United States v. Ready, 82 F.3d 551, 556 (2d Cir. 1996); United States v. Giorgi, 840 F.2d 1022, 1025 (1st Cir. 1988); United States v. Verrusio, 803 F.2d 885, 886 (7th Cir. 1986); United States v. Calabrese, 645 F.2d 1379, 1390 (10th Cir. 1981). The courts of this state have taken a similar approach. See State v. Howington, 907 S.W.2d 403, 407-08 (Tenn. 1995). The general rule has been that where an agreement is accepted and later breached, the remedy for the breach is either specific performance or restoration of the parties to the status existing immediately before the plea was entered. See

6

Harris v. State, 875 S.W.2d 662, 666 (Tenn. 1994); State v. Turner, 713 S.W.2d 327, 329 (Tenn Crim. App. 1986); Metheny v. State, 589 S.W.2d at 945.

We note, however, that a defendant's rights relative to a plea bargain are grounded in more than contract; contract principles, while useful, do not completely define the obligations of the parties. "'Plea agreements . . . are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain.'" United States v. Ready, 82 F.3d at 558 (quoting Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992)); see also United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986) (the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law).

Since Santobello v. New York, 404 U.S. 257 (1971), Tennessee courts have held that where the State breached a plea agreement, or some other infirmity occurred that was not caused by the defendant, but which invalidated the agreement, the remedy for breach was to allow the defendant to choose either specific performance or withdrawal of the plea. Goosby v. State, 917 S.W.2d 700, 707 (Tenn. Crim. App. 1995); see also Harris v. State, 875 S.W.2d at 666-67; State v. Turner, 713 S.W.2d at 329; Metheny v. State, 589 S.W.2d at 945. We have not previously had the opportunity to address the situation where it was the defendant, not the State, who breached a plea agreement. In other jurisdictions, however, it appears that the same options remain available: the State has the option either to specifically enforce the agreement or to rescind the plea agreement. See State v. Thomas, 899 P.2d 1312, 1315 (Wash. Ct. App. 1995), and the cases cited therein.

In this case, the State clearly did not want to rescind the agreement; it opposed the defendant's motion to withdraw the guilty plea. Instead, the State chose to specifically enforce the agreement. Under such circumstances, the State's rights are necessarily measured by the terms of the agreement. If the parties contemplated that the defendant would be bound by his plea if he breached the agreement, the guilty plea would stand. See, e.g., State v. Armstrong, 35 P.3d 397, 399 (Wash. Ct. App. 2001). Because the provisions of any plea agreement are largely dictated by the State, and because of the substantial constitutional interests implicated by plea agreements, the State must bear the risk for any lack of clarity in the agreement, and ambiguities should be resolved in favor of the defendant. State v. Howington, 907 S.W.2d at 410; see also Innes v. Dalsheim, 864 F.2d 974, 979 (2d Cir. 1988), cert. denied 493 U.S. 809 (1989); United States v. Giorgi, 840 F.2d at 1026 ("[T]he government must shoulder a greater degree of responsibility for lack of clarity in a plea agreement."); United States v. Harvey, 791 F.2d at 300 ("[C]onstitutional . . . concerns require holding the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements.").

In this case, the plea agreement does not expressly state what would happen if the defendant breached the agreement. Furthermore, there is no evidence in the record that the defendant was ever informed that if he failed to keep his part of the agreement to testify against his co-defendants that (a) the State would not keep its agreement to recommend a sentence of life with the possibility of parole; and (b) he would not be permitted to withdraw his guilty plea. It has been held that where

7

a defendant is not clearly informed of the consequences of a breach of the plea agreement, the denial of a motion to withdraw the plea violates due process. See Innes v. Dalsheim, 864 F.2d at 979-980 (holding that where the plea agreement was ambiguous regarding the consequences of a breach, the State bore the burden for any lack of clarity in the agreement, and it could not be safely said that the defendant voluntarily, knowingly and intelligently waived his right to a jury trial and to be tried on the original charges).[2] It is the ambiguity in the plea agreement in question upon which we rest our decision in this case.

As part of the plea agreement in which the defendant pleaded guilty in exchange for the State's recommendations as to sentencing, the defendant also agreed to "testify truthfully in any other proceeding in connection with this incident." There is no dispute in this case that Mellon breached the agreement when he failed to testify against Ernest Rogers. His failure to do so constituted a material breach of the agreement. The State argues that the colloquy between Mellon and the trial court provided Mellon with sufficient notice as to the consequences of a breach of the agreement. We disagree. While the trial court did explain that sentencing would be reserved until after the defendant's testimony or the conclusion of the trials of his co-defendants, the court did not explain to the defendant that if he failed to testify, he would be subject to a full sentencing hearing with the possibility of a sentence of death. Because both the plea agreement and the trial court's discussion of the plea with the defendant failed to inform him of the consequences of a breach, we hold that his guilty pleas and waiver of rights were not voluntary and knowing as required by due process. Because the issue of the knowing and voluntary nature of the pleas is dispositive, the other numerous issues raised on appeal are pretermitted.

This is not to say that plea agreements cannot be fashioned to preclude specific enforcement. In stressing the importance of drafting plea agreements with care, the Second Circuit Court of Appeals has stated that "[t]he government should make it absolutely clear in a plea agreement that a breach by the defendant releases the government from its obligation to recommend leniency but does not release the defendant from the plea of guilty." United States v. Rivera, 954 F.2d 122, 125 (2d Cir. 1992). We encourage the State in future agreements where the agreed sentence is conditioned on future performance (or non-performance) of a certain event to specifically articulate the possible consequences if the defendant fails to perform. In this way the State and the courts can be assured that any agreement is entered into with full knowledge of the risks the defendant faces if he or she chooses to renege on the agreement.

---

[2] Compare Ricketts v. Adamson, 483 U.S. 1 (1987), and Lopez v. State, 536 So. 2d 226 (Fla. 1988), in which the plea agreement documents clearly and specifically set forth the consequences if the respective defendants refused to testify in accordance with their agreements. In Ricketts, the agreement provided that "should the defendant refuse to testify . . . then this entire agreement is null and void and the original charge will be automatically reinstated." In Lopez, the agreement provided that if the defendant failed to testify, he would lose his life sentence and be subject to a possible sentence of death. In both cases, the courts refused to provide the defendants relief from the bargains to which they had voluntarily and knowingly bound themselves.

8

## CONCLUSION

To summarize, we hold that because the defendant was not adequately informed as to the consequences of a breach of his plea agreement, the trial court's failure to allow the defendant to withdraw his plea, and the subsequently imposed sentence of death, violated the defendant's right to due process. Accordingly, we reverse the decision of the Court of Criminal Appeals and remand to the trial court for further proceedings consistent with this opinion.

Costs of this appeal are assessed against the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE