# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 18, 2012

## STATE OF TENNESSEE v. DENNY MCABEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2011-A-717      Steve R. Dozier, Judge**

**No. M2011-02628-CCA-R3-CD - Filed December 17, 2012**

The petitioner, Denny McAbee, pled guilty in the Davidson County Criminal Court to aggravated burglary. The trial court sentenced the petitioner to fourteen years in the Tennessee Department of Correction. Subsequently, the petitioner filed a motion to set aside his guilty plea, which the trial court denied. On appeal, the appellant challenges the trial court's ruling. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Denny McAbee.

Robert E. Cooper, Jr., Attorney General and Reporter, Rachel Harmon, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

At the guilty plea hearing, the State recited the following factual basis for the plea:

> [T]he State's proof would have shown that . . . on January 3[],
> 2011[,] at approximately 8:50 [a.m., the petitioner] was
> observed by Daniel Walker sitting on a porch in Robert
> [Clement's] residence a[t] 1425 McGavock Pike. Mr. Walker
> heard a noise[,] and the [petitioner] was no longer on the side

porch. Another witness[,] Carrie McKinsky (phonetic)[,] was walking a dog in the back yard of 1427 ½ A McGavock Pike [and] talking on a cell phone[. S]he saw this happen and called police. Officers responded to 1425 McGavock Pike[,] where one of the officers saw the [petitioner] coming off the front porch with a gree[n] bag in his hand. The bag contained a laptop computer. The [petitioner] was also in possession of the victim's [iPod].

The [petitioner] was placed into the police vehicle at that time and gave the police the name of Brian Allan with the date of birth of 3/13/72, which was false. A pane of glass was broken out of the side door of that residence where the [petitioner] made entry. As the victim and witness [were] being interviewed, the [petitioner] escaped from custody. After a foot chase and a K-9 conducted track, the [petitioner] was placed into custody again in a back yard. In his back pocket[,] a blue tooth device was found and a gold ring. The [petitioner] was interviewed by Detective Beaty where in the interview the [petitioner] stated that he went to the victim's residence with another unknown individual.

The total value of the property that was taken from the residence was more than $500. Therefore, fingerprints were taken from this case[,] and they were identified to the [petitioner].

The petitioner pled guilty to aggravated burglary. The plea agreement provided that the petitioner was a Range III persistent offender, that he was subject to a sentence between twelve and fifteen years imprisonment, and that the trial court was to determine the exact length and manner of service of the sentence. At the sentencing hearing, the trial court found that the petitioner had poor rehabilitative potential, noting his extensive criminal history, his failures on probation and parole, and that he committed the instant offense within ninety days of his release from prison. The trial court imposed a fourteen-year sentence, forty-five percent of which the petitioner was to serve in confinement before being eligible before release. The trial court denied alternative sentencing due to the petitioner's failure to rehabilitate after "numerous prior attempts at alternative sentencing."

Thereafter, on June 29, 2011, the petitioner filed a motion to set aside his guilty plea. The petitioner averred that prior to pleading guilty, he and defense counsel discussed

community corrections, split confinement, and halfway houses geared toward treating the petitioner's drug addiction. The petitioner maintained that based upon the representations of defense counsel, he pled guilty believing that he would receive an alternative sentence.

At a hearing on the motion, the petitioner acknowledged he was told he would receive a sentence between twelve and fifteen years. However, he maintained that he thought the trial court could only impose a maximum of one year in confinement, with the balance of the twelve- to fifteen-year sentence to be served in drug rehabilitation, a halfway house, community corrections, or some combination of the three. The petitioner conceded that he was not guaranteed a sentence of split confinement. He stated that trial counsel advised him that he did not qualify for drug court but that he did qualify for community corrections.

The petitioner said that counsel advised him that if he were accepted into a drug rehabilitation program, he would be "fairly much guaranteed" to get community corrections. He said counsel never told him that he could be ordered to serve the entire sentence in confinement.

The petitioner said that because of his age and history, he entered the plea. However, he maintained that he would not have pled guilty and would have proceeded to trial had he been aware the trial court could sentence him to twelve to fifteen years in prison, noting that he had recently finished serving a fifteen-year sentence.

On cross-examination, the petitioner acknowledged that he had a lengthy criminal history and that he had entered numerous guilty pleas in the past. He said that he asked the trial court for mercy at the sentencing hearing because he did not want to serve even one year in confinement. He said he would have understood the plea agreement if trial counsel had said "you [are] going to go in here in front of [the trial court], throw yourself at the mercy of the [c]ourt, whatever, the most you [are] going to get is 15 years in prison, the least you [are] going to get is a year [in prison]." The petitioner acknowledged that the plea form did not state that he would only have to serve one year in confinement; however, he maintained that the plea form did not state that he could be sentenced to fifteen years in prison. He did not recall the trial court advising him at the plea hearing that he could receive twelve to fifteen years in prison, maintaining that he would have stopped the proceedings if he had been so advised.

The petitioner said that he heard the State argue for a sentence of total incarceration at the sentencing hearing. He said that was the first time he heard that he could be required to serve his entire sentence in confinement. He acknowledged that he did not say anything. The petitioner denied admitting at the guilty plea hearing that he broke into the victim's house to get money for cocaine. He testified that he thought the guilty plea hearing transcript

had been altered. The petitioner said, "I just got through doing 15 years, was out 74 days. On the first offer, accept 15 years at 45 percent, that would be crazy, wouldn't it?"

At the conclusion of the hearing, the trial court denied the petitioner's motion, finding that neither the petitioner's testimony, the transcripts of the guilty plea hearing, or the sentencing hearing supported the petitioner's contentions. On appeal, the petitioner contests the trial court's ruling.

## II. Analysis

Generally, a guilty plea cannot be withdrawn as a matter of right. State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003). Nevertheless, Rule 32(f) of the Tennessee Rules of Criminal Procedure provides that "[b]efore sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason." Tenn. R. Crim. P. 32(f)(1). However, "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2); see also State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003).

In the instant case, the petitioner did not indicate a desire to withdraw his plea until after he was sentenced. Therefore, the petitioner was entitled to a withdrawal of his guilty plea only to correct manifest injustice. Rule 32 does not provide a definition of manifest injustice. State v. Crowe, 168 S.W.3d 731, 741-42 (Tenn. 2005). Regardless, our courts have determined that

> [w]ithdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

State v. Virgil, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008); see also State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). However, "a defendant's change of heart about pleading guilty or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." Crowe, 168 S.W.3d at 743.

The record reflects that at the guilty plea hearing, the trial court advised the petitioner that he would receive a sentence between twelve and fifteen years and that the court would determine the manner of service of the sentence. At the sentencing hearing, the petitioner testified that he knew he would have to serve at least part of his sentence in confinement, but he begged the trial court for drug treatment. As the trial court found, the petitioner's testimony at the hearing to withdraw his guilty plea is not supported by the record. We agree with the trial court that the petitioner has failed to show that manifest injustice warrants the withdrawal of his guilty plea.

### III.  Conclusion

In sum, we conclude that the trial court did not err in denying the petitioner's motion to withdraw his guilty pleas. Therefore, we affirm the judgment of the trial court.


_____

NORMA McGEE OGLE, JUDGE