IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 11, 2017

## STATE OF TENNESSEE v. DEVIN WHITESIDE

**Appeal from the Circuit Court for Madison County**
**No. 14-644   Kyle Atkins, Judge**

_____

### No. W2016-00671-CCA-R3-CD

_____

The Appellant, Devin Whiteside, pled guilty to two counts of aggravated robbery, and he received concurrent sentences of eight years in the Tennessee Department of Correction. Thereafter, the Appellant filed a motion to withdraw his guilty pleas, alleging that after the plea hearing, he obtained information relating to the testimony of two of the State's witnesses. He maintained that, if he had been provided the information prior to the plea, he would not have pled guilty. The trial court denied the motion, and the Appellant appeals. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Joshua B. Dougan, Jackson, Tennessee, for the Appellant, Devin Whiteside.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; James G. Woodall, District Attorney General; and Aaron J. Chaplin, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On December 1, 2014, the Madison County Grand Jury returned a multi-count indictment charging the Appellant and his co-defendant, Gerald Hampton, with two counts of aggravated robbery and three counts of identity theft. At the November 30, 2015 guilty plea hearing, the Appellant assured the trial court that he understood the charges he was facing and that he understood the proceedings. The trial court informed

the Appellant that by pleading guilty, he was waiving certain rights, including his rights to a trial by jury, to confront witnesses, to compel witnesses, and to appeal his convictions. The trial court asked if the Appellant understood the rights he was waiving. Instead of answering the trial court's question, the Appellant asked, "How – how long do I have to withdraw this plea?" The trial court responded, "[I]f you're already talking about withdrawing, it makes me think that you don't want to go forward." The Appellant explained that he wanted to know if he could change his mind and go to trial after he signed the plea agreement. The trial court cautioned that if the Appellant pled guilty, it was "[v]ery unlikely that's going to happen." The Appellant said that he had no more questions.

The trial court agreed to stop the proceeding if the Appellant had other questions in order to clear up any misunderstandings. The Appellant then acknowledged that he understood the rights he was waiving by entering his guilty pleas. The Appellant asserted that he was entering his guilty pleas "freely and voluntarily"; that he was not being threatened, coerced, forced, or pressured into pleading guilty; and that he thought pleading guilty was the "best course of action" for him.

The trial court asked if the Appellant had any questions for his attorney or for the trial court, and the Appellant responded, "Nothing other than that withdraw the plea." The court stated that the Appellant's questions about withdrawing the plea gave the court concerns about allowing the Appellant to plead guilty. The court again warned the Appellant that if he pled guilty, his "chances of withdrawing it [were] very slim." The Appellant said that he understood. The court asked if the Appellant wanted to plead guilty then immediately file a motion to withdraw the plea. The Appellant said that he did not intend to file a motion "immediately" but that he wanted to know "how long [he] had." The trial court asked if the Appellant needed more time to consider the plea, and the Appellant said yes. The trial court noted that the Appellant's case was set for trial the following Friday and allowed the Appellant to wait until then to plead guilty or to proceed to trial.

However, later on the day of the plea, counsel told the court that she and the Appellant had a "miscommunication" earlier and that the Appellant "understands where we are now." Counsel explained that the Appellant wanted to accept the plea but that he also thought counsel wanted him to accept the plea because she did not want to go to trial. Counsel said that after she and the Appellant discussed the matter again, the Appellant wanted to go forward with the guilty plea.

The trial court reiterated the advice and cautions it had given the Appellant previously then asked, "Did you clear up the misunderstanding you had about withdrawing your guilty plea?" The Appellant responded, "Yes, sir, I did." The Appellant asserted that he had no further questions for the trial court. The Appellant

agreed to stipulate to the facts stated in the indictment. He further agreed that he was accepting concurrent sentences of eight years for each conviction with release eligibility after serving eighty-five percent of the sentences, that the sentences would run consecutively to two previously imposed sentences, and that the identity theft charges were to be dismissed.

On December 30, 2015, the Appellant filed a pro se motion to withdraw his guilty pleas. The Appellant alleged that "due to coercion, duress and fear from [counsel], he did not knowingly and voluntarily enter[] a plea of guilty." The Appellant further alleged that counsel was ineffective, that the Appellant was innocent of the crimes, and that he should be allowed to withdraw his guilty pleas.

On February 29, 2016, the trial court conducted a hearing on the motion, during which the Appellant was represented by another attorney. The Appellant testified that his family had hired counsel around August 2014. The Appellant was indicted in December 2014. The Appellant said that counsel did not talk with him much and that she told him to let her handle the case. Counsel told the Appellant that the State's case was weak and that she would do her best at trial. The Appellant asked her to file pretrial motions, but no motions were filed.

The Appellant agreed that he decided to plead guilty based upon his knowledge of the case at the time of the plea hearing. The Appellant said that after the plea, he received a copy of the statement made by Alexis Blue,[1] who was not indicted as a co-defendant but used one of the stolen credit cards with the Appellant. The Appellant maintained that in the statement, Blue "clearly separated the time from . . . the aggravated robbery that I allegedly committed and the identity theft that I committed." The Appellant acknowledged that he was aware of Blue's statement prior to the plea hearing because counsel had read it to him, he complained that she had not given him a copy to "read it, diagnose it."

The Appellant also said that on November 12, 2014, Investigator Aubrey Richardson, who was the lead investigator in the Appellant's case, testified at a hearing to revoke the Appellant's parole. The Appellant acknowledged that he was at the hearing and that he heard the investigator's testimony. However, he complained that he did not have a written copy of the testimony to review until after the November 2015 plea hearing. The Appellant said that if he had been given a written copy of Investigator Richardson's testimony and Blue's statement prior to the plea hearing, he would not have pled guilty and would have gone to trial.

---

[1]In the record, this individual is referred to occasionally as Alexis Hawkins.

- 3 -

On cross-examination, the Appellant said that he was twenty-seven years old and that he had pled guilty on multiple occasions. He acknowledged that he was "pretty familiar with the system."

The Appellant conceded that he admitted to police that he used a credit card that was stolen during one of the aggravated robberies. The same credit card was also the subject of one of the identity theft charges. The Appellant conceded that the State had a security video that showed Blue and him using the stolen credit card.

The Appellant said that the trial court reviewed the charges and his rights at the guilty plea hearing. The Appellant agreed that counsel provided him with copies of the discovery and that he was satisfied with her representation at the time of the guilty plea hearing.

Counsel testified that she was retained by the Appellant's family in the summer of 2014 and that the Appellant was indicted in December 2014. She obtained discovery and mailed a copy to the Appellant. Counsel and the Appellant discussed the case. He asked her to file pretrial motions, but she did not think any motions needed to be filed. Initially, counsel thought that the case would be "open and shut" because the State had difficulty obtaining witnesses. However, after the State obtained their witnesses, counsel advised the Appellant that the case would not be as easy to get dismissed.

Counsel said that she had known about Blue since the beginning of the case. She noted that Blue was not indicted with the Appellant and Hampton because the State had been unable to locate her until 2015. On November 20, 2015, Blue gave her statement to Investigator Richardson. Counsel received Blue's statement a couple of weeks before the Appellant pled guilty and learned that Blue was going to testify against the Appellant. Counsel said that Blue was not involved in the aggravated robberies and that she could only testify about the identity thefts. Counsel said that Blue's statement was consistent with the other information provided in discovery.

Counsel acknowledged that she did not provide a copy of the statement to the Appellant; however, she read the statement to him, told him how Blue would testify, and advised him about how the case should proceed. Counsel asserted that the conversation about Blue's statement occurred before the Appellant pled guilty.

Counsel said that she and the Appellant reviewed the plea agreement in "great detail" and that she explained his rights to him.

On cross-examination, counsel explained that she was unable to mail the Appellant a copy of Blue's statement because he was incarcerated, repeatedly moved to different prison facilities, and she often did not know to which location to mail the

information.  Counsel and the Appellant discussed the identity theft charges and determined that the State's evidence on those charges was "slightly weak."  Because the identity theft charges were dismissed pursuant to the plea agreement, counsel opined that Blue's "statement really . . . didn't hurt [the Appellant] at all."  On the day of the plea hearing, counsel asked if the Appellant wanted a copy of Blue's statement.  He said that he did not because he knew the substance of the statement and agreed it would not hurt his case.

The Appellant testified in rebuttal that on November 30, 2015, he was in the Madison County Jail when he and counsel discussed the plea agreement.  He acknowledged that they also discussed Blue's statement.  The Appellant said that he asked counsel for a copy of the statement but that he never received it.  He said that if he had received a copy, he "could have went through it and diagnosed it all myself and kind of been – had a clear mind of what I needed to do."

On cross-examination, the Appellant said that counsel read Blue's statement to him while he was in jail and again just before he pled guilty.  The Appellant told counsel about Investigator Richardson's parole hearing testimony but never asked for a written copy of it.

The State recalled counsel, who said that the Appellant never told her about Investigator Richardson's parole hearing testimony and that she would have researched it if she had known about it.  Counsel knew the Appellant had a parole hearing, and they had talked about Investigator Richardson, but they never discussed the specifics of the parole hearing.

Counsel said that she first told the Appellant about Blue's statement during a telephone conversation.  Shortly thereafter, they met at the jail and "went over it in detail."  Counsel said, "I read it to him, he read it himself, he had it in his hand."  She acknowledged that she "didn't think to bring a copy of it with me to the jail that day."  She told him that if he pled guilty, he would not need a written copy of the statement but that if he chose to go to trial, she would give him a copy.  They discussed the statement again on the day of the plea hearing.

At the conclusion of the hearing, the trial court noted that during the guilty plea hearing, the court reviewed the guilty plea procedure with the Appellant twice, and the Appellant assured the court that he understood, that he was pleading guilty freely and voluntarily, that he had not been forced or pressured into pleading guilty, that he reviewed the case with counsel, and that she had answered all of his questions.  The trial court said the Appellant "didn't mention anything at the plea [hearing] about a statement or motions that weren't filed or any testimony of [Investigator] Richardson."  The Appellant admitted the facts alleged in the indictment.

The trial court found that Investigator Richardson's testimony was not new information to the Appellant, noting that the testimony occurred approximately one year prior to the plea hearing and that the Appellant heard the testimony when it occurred. The court also found that Blue's statement would not have made a difference in the Appellant's decision to plead guilty to aggravated robbery and observed that the identity theft charges were dismissed as part of the plea agreement. Further, the trial court accredited the testimony of counsel. The trial court held that the Appellant failed to prove that manifest injustice required that he be allowed to withdraw his guilty pleas.

On appeal, the Appellant challenges the trial court's denial of his motion to withdraw his guilty plea.

## II. Analysis

Generally, a guilty plea cannot be withdrawn as a matter of right. State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003). Nevertheless, Rule 32(f) of the Tennessee Rules of Criminal Procedure provides that "[b]efore sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason." Tenn. R. Crim. P. 32(f)(1). However, "[a]fter sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2); see also State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003). The decision to allow a defendant to withdraw a plea is a matter addressed to the sound discretion of the trial court. State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005).

In the instant case, the Appellant did not indicate a desire to withdraw his pleas until after he was sentenced. Therefore, he was entitled to withdraw his guilty pleas only to correct manifest injustice. Rule 32 does not provide a definition of manifest injustice. Crowe, 168 S.W.3d 741-42. Regardless, our courts have determined that

> [w]ithdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

- 6 -

State v. Virgil, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008); see also State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).  However, "a defendant's change of heart about pleading guilty or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal."  Crowe, 168 S.W.3d at 743.

On appeal, the Appellant contends that counsel's failure to obtain a written copy of Investigator Richardson's testimony at the Appellant's parole revocation hearing "caused [him] to enter a plea based on incomplete information."  The Appellant further contends that counsel's failure to provide him with a copy of Blue's statement prior to his pleas deprived him of the ability to "adequately review[] the statement and analyze[] its impact on his case."  The Appellant maintains, therefore, that his "plea was involuntary because it was based on incomplete information."  The State asserts that the Appellant knew all of the information relevant to his case prior to his guilty plea hearing and that he failed to prove that he should be allowed to withdraw his guilty pleas to correct manifest injustice.  We agree with the State.

The trial court found that the Appellant knew about Investigator Richardson's testimony, noting that the Appellant was present at the parole revocation hearing at which the investigator testified.  The hearing occurred approximately one year before the Appellant pled guilty.  Further, the trial court accredited counsel's testimony that the Appellant did not tell her about Investigator Richardson's parole hearing testimony or ask her to obtain a written copy of the testimony.  The trial court also accredited counsel's testimony that she reviewed Blue's statement with the Appellant on two occasions before the day of the Appellant's guilty plea hearing and again on the day of the hearing.  The trial court further accredited counsel's assertion that the statement concerned only the identity theft charges, which were dismissed pursuant to the plea agreement.  Therefore, the Appellant failed to establish manifest injustice.  Moreover, the Appellant did not submit a copy of Blue's statement or a copy of Investigator Richardson's testimony as exhibits; therefore, any benefit this evidence may have offered is speculative.  Cf. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  The record contains no evidence to suggest the trial court abused its discretion in denying the Appellant's motion to withdraw his guilty pleas.

### III.  Conclusion

The judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE