FILED

09/26/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 24, 2019

## STATE OF TENNESSEE V. RICKY JAN STEVISON

**Appeal from the Criminal Court for Bradley County
No. 17CR97  Sandra Donaghy, Judge**

_____

### No. E2018-01832-CCA-R3-CD

_____

Defendant, Ricky Jan Stevison, pled guilty to theft of property and was sentenced to two years on supervised probation with the trial court to determine the issue of restitution at a hearing.  Defendant subsequently filed a motion to withdraw his guilty plea.  The trial court denied the motion after a hearing.  Because we determine that the trial court did not abuse its discretion, we affirm the judgment of the trial court.  However, because the judgment form does not include the amount of restitution or the terms of the repayment, we remand to the trial court for entry of an amended judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., J., joined.  CAMILLE R. MCMULLEN, J. filed a dissenting opinion.

Richard Hughes, District Public Defender; John Fortuno, Assistant District Public Defender (at guilty plea); and Chessia A. Cox (at hearing on motion to withdraw guilty plea), Athens, Tennessee, for the appellant, Ricky Jan Stevison.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Drew Robinson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was indicted in March of 2017 for financial exploitation of the elderly pursuant to Tennessee Code Annotated section 39-14-111 and theft of property valued at more than $10,000 but less than $60,000 pursuant to Tennessee Code Annotated section

39-14-103.  On January 25, 2018, Defendant pled guilty to one count of theft of property valued at more than $2500 but less than $10,000, a Class D felony.  At the guilty plea hearing, the State indicated that if the matter had gone to trial, the following facts would have been submitted to a jury.

Forest Jack Coleman, the victim, was a senior citizen who had been diagnosed with senile dementia.  Defendant was interviewed by the victim's family on June 8, 2015, and then hired shortly thereafter as a caretaker.  About one month later, in order to secure a conservatorship for the victim, the victim's family compiled a list of the victim's assets.  The victim's niece, Janie Coleman, took some jewelry from the victim's residence on July 7 and photographed the jewelry for documentation for the conservatorship.  Ms. Coleman returned the jewelry to the victim's home.  Ms. Coleman asked Defendant to take the victim to open a safe deposit box.  Defendant took the victim to open a safe deposit box and deposited all of the jewelry and other property in the box.  Defendant did not notify the family of the location of the bank where the property was held and stopped all communication with the family.  On July 20, Suntrust Bank contacted Ms. Coleman to inform her of excessive withdrawals from the victim's checking account.  On July 22, Charter Cable installed Internet and phone service at the victim's residence without consultation with the family.  On July 29, the victim's family was notified that Defendant had inquired about a home equity line of credit for the victim.

In early August, the family fired Defendant, and Adult Protective Services opened an investigation into the matter.  During the investigation, the victim met with his guardian ad litem and claimed that Defendant was in possession of his car keys and credit cards.  The guardian noted that the victim was distracted and needed to have things repeated to him several times during their conversation.  The family eventually located the safe deposit box.  When a court order was obtained for the safe deposit box to be opened, there was nothing inside except an empty envelope from Landmark Insurance.  The family requested that Defendant return all of the victim's belongings.  Defendant complied by returning the victim's car keys, checkbooks, a birth certificate and death certificate for the victim's brother, a social security card, military records, and other family documents.  Defendant expressed his concern about the victim and claimed that he was considering applying for a conservatorship over the victim.  It was eventually discovered that all of the coins and jewelry that were in the safe deposit box were in the possession of Defendant.  Defendant sold jewelry and coins to Cleveland Coin and Jewelry on three separate occasions, all of which was identified as jewelry and coins that were taken from the victim or given by the victim to Defendant.  At some point, some of the jewelry was in the possession of Defendant's trial counsel.  Counsel inventoried and photographed the jewelry and made Defendant sign for it prior to releasing it to Defendant.  The victim was deceased at the time of the guilty plea hearing.

At the conclusion of the State's recitation of the proposed facts, Defendant agreed that the guilty plea was in his best interest. The State, however, commented that the plea was not a best interest plea. The State explained that the "exploitation of an adult" charge was being dismissed because "[i]t speaks in terms of money, as opposed to property." Counsel for the State explained that there was a "bill pending that would attach [the statute] to property, but it of course wouldn't apply to this Defendant." The trial court sentenced Defendant to two years, suspended to supervised probation. According to the judgment form, the trial court "expressly reserved" the issue of restitution to a hearing on March 23, 2018. The financial exploitation of the elderly charge was dismissed.

At the conclusion of the guilty plea hearing, the trial court accepted the plea and found it was "freely and voluntarily given" by Defendant who had "full knowledge and understanding of the consequences." Again, the trial court commented that it was to determine the amount of restitution at another hearing.

Less than a month after entering the guilty plea, on February 23, 2018, Defendant filed a motion to set aside his guilty plea. About one week later, Defendant filed an amended motion to set aside the guilty plea. The Public Defender's Office filed a motion to withdraw on the basis that Defendant's motion made it "necessary for counsel for [D]efendant to be called as a witness."

Substitute counsel was appointed. On July 3, 2018, substitute counsel filed a second amended motion for relief, arguing that Defendant was entitled to relief pursuant to Tennessee Rule of Criminal Procedure 32(f) because "he was told that in exchange for his guilty plea in criminal court the corresponding civil case filed by the family of the alleged victim would be dismissed."

At the September 8, 2018 hearing on the motion to withdraw the guilty plea, Defendant's original trial counsel, an assistant public defender, testified that he was appointed to represent Defendant. He recalled that about a week prior to the trial date, an offer had been extended by the State to Defendant. According to trial counsel, there were some negotiations back and forth, and the parties eventually came up with a plea agreement. Trial counsel explained that the agreement included dropping the "elder abuse charge," reducing the theft "from a C felony to a D felony" with a sentence at the bottom of the range. The two-year sentence was to be suspended, and "an additional part of the agreement was there would be a restitution hearing determined at a later date as to [the value of] . . . jewelry items that were pawned that were not returned." Trial counsel also explained that there was a pending civil suit brought by the victim's family. Trial counsel testified that he was told by "General Robinson on the phone," probably a week or two prior to the plea agreement, that "as part of [the] plea agreement that the civil suit

would be nonsuited, be dismissed." Trial counsel communicated this information to Defendant. Trial counsel acknowledged that the civil suit was not discussed at the plea hearing. Defendant contacted trial counsel after the guilty plea and asked trial counsel to withdraw the plea because the civil suit had not been dismissed. Trial counsel filed a motion to withdraw the plea. On cross-examination, trial counsel acknowledged that there was nothing in the plea agreement that discussed the dismissal of the civil suit. Trial counsel also acknowledged that he was made aware that Defendant was attempting to sell the victim's jewelry after the guilty plea hearing but prior to the restitution hearing.

The District Public Defender also testified. He was aware that trial counsel was appointed to represent Defendant. The District Public Defender also testified that he was "aware there was civil litigation" in conjunction with the criminal case. He "recall[ed] talking with [trial counsel] about [dismissal of the civil suit]." Specifically, he testified that "there was a discussion about the civil case being dismissed or nonsuited, if there was a plea agreement reached and he entered a plea and was sentenced by [t]he [c]ourt." The District Public Defender recalled trial counsel discussing this possibility with Defendant and his wife.

Defendant testified at the hearing that he was served with papers for a civil suit about four days prior to the scheduled trial date in the criminal case. Defendant met with trial counsel on January 25, 2018, where they discussed the plan "[b]asically to enter a guilty plea" so that "[t]he lawsuit would be dismissed, that was the main thing." Defendant explained that both his wife and the District Public Defender were present during the conversation with trial counsel. Defendant was under the impression that even if he "won the trial, [he] would not win the lawsuit." According to Defendant, it was "very" important that the civil case be dismissed because Defendant was "wore out" from everything that had been going on for nearly four years. At some point after the entry of the plea, Defendant became aware that the civil suit was not dismissed. Defendant thought that he learned this information from another lawyer to whom Defendant had spoken about the civil suit. This lawyer was not present at the hearing to withdraw the guilty plea. Defendant claimed that he would not have taken the plea agreement if the lawsuit was not part of the deal. Defendant explained that he did not have a lot of experience with the criminal justice system.

Defendant's wife, Terry Stevison, testified that she was present on January 25, 2018, when trial counsel communicated the plea offer to Defendant. She recalled trial counsel telling them "[t]hat if they dropped the lawsuit everything would be dropped." In other words, "[t]hey were supposed to drop the lawsuit, and he would take the plea deal, and then everything would be gone."

- 4 -

At the conclusion of the hearing on the motion to withdraw the guilty plea, the trial court found that Defendant lacked credibility. The trial court specifically noted that Defendant was found indigent and that the first affidavit of indigency listed no assets other than a Chrysler valued at less than $250. On the second affidavit of indigency, Defendant still claimed that he had no property other than a Jeep valued at $1000. At the hearing, however, Defendant testified that he was worried about the civil suit because he would lose his home. The trial court noted the plea colloquy reflected "no mention of any pending civil case, any resolution of any civil case, or any conditioned resolution of a civil case." The trial court "was surprised" by Defendant's claims at the hearing because the "plea colloquy hearing is devoid of anything about this civil lawsuit." The trial court did not "accredit [Defendant's] testimony" with regard to what he claimed trial counsel told him about the civil suit. The trial court could not "imagine . . . that all these people would negotiate something and nobody would get it in writing, document it, put it onto [t]he [c]ourt record, make it part of a plea agreement if it was anything more than a - - part of legal advice given." The trial court determined that the "plea colloquy addresse[d] every factor . . . going to the voluntariness of the action." The trial court found that Defendant had limited experience with the judicial system but that the plea colloquy was detailed enough to "educate someone who had never had any contact with the system on exactly what decisions they were making . . . ." The trial court found that there was prejudice to both parties if the guilty plea was withdrawn. The trial court described the case as a "mess" but ultimately determined that "if this plea agreement was conditioned on dismissal on this civil suit, that it would be in writing and articulated by at least on[e] of these [a]ttorneys[,] all of whom . . . [are] reasonable and competent." The trial court found that Defendant "wished that there was communication about the impact the civil suit would have on the criminal case and vice versa, but it was not a term of the plea agreement." In conclusion, the trial court denied the motion to withdraw the plea.

On October 1, 2018, about one week after the denial of the motion to withdraw the guilty plea, the trial court had a hearing to determine the amount of restitution Defendant would be required to pay to the family of the victim for the pieces of jewelry that were not returned. The trial court determined Defendant owed $5700 in restitution and that payments would be made at a rate of $200 per month.

Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court erred in denying the motion to withdraw the guilty plea. Specifically, Defendant argues that he did not "knowingly, voluntarily and understandingly" enter the plea and that the trial court improperly discredited the testimony of trial counsel, Defendant, and the District Public Defender

when the State presented no evidence to contradict their testimony. The State disagrees, arguing that the trial court did not abuse its discretion.

"A defendant does not have a unilateral right to withdraw a plea." *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005) (citing *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003)). However, Tennessee Rule of Criminal Procedure 32(f) provides that a trial court may permit the withdrawal of or may set aside a guilty plea under two circumstances: (1) for any fair and just reason before the sentence is imposed; or (2) after the imposition of the sentence but before the judgment becomes final, "to correct manifest injustice." *See State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003) (holding that a judgment of conviction becomes final 30 days after entry of the guilty plea and imposition of the sentence).

The before sentencing, or "fair and just," standard has been described as the less stringent of the two. *See State v. Phelps*, 329 S.W.3d 436, 444 (Tenn. 2010). The Tennessee Supreme Court adopted the following non-exclusive list of factors in determining what constitutes "any fair and just reason" supporting the withdrawal of a guilty plea prior to a sentence being imposed:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 446 (quoting *United States v. Haywood*, 549 F.3d 1049, 1052 (6th Cir. 2008)); *see also United States v. Spencer*, 836 F.2d 236, 239-40 (6th Cir. 1987).

A trial court's determination regarding a motion to withdraw guilty plea is reviewed for an abuse of discretion. *Phelps*, 329 S.W.3d at 443. An abuse of discretion occurs when a trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, . . . applies reasoning that causes an injustice to the complaining party[, or] . . . fail[s] to consider the relevant factors provided by higher courts as guidance for determining an issue." *Id.* (internal citations omitted). In determining whether to grant a motion to withdraw a guilty plea, trial courts "should always exercise . . . discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial." *Id.* at 444 (internal quotation and citation omitted).

Defendant filed the motion to withdraw the plea after the uniform judgment form was entered but before sentencing, thus the less stringent standard applied. It is unclear from the record why the uniform judgment form was entered while sentencing issues (restitution) remained unresolved.

Although not precisely stated, it appears that the trial court properly considered the less stringent, before sentencing, *Phelps* factors. The trial court noted that the motion to withdraw the guilty plea was filed "two days short of the judgment becoming final."[1] The trial court noted that Defendant "has not asserted or maintained his innocence" and that the circumstances of the plea "address every factor . . . going to the voluntariness of the action." The trial court conceded that Defendant had limited experience with the criminal justice system but commented that the level of detail set forth in the plea acceptance hearing "could educate someone who had never had any contact with the system on exactly what decisions they were making." The trial court determined that there would be prejudice to both the State and Defendant if the plea were withdrawn because there would be a significant delay on the resolution of the matter.

After considering each of the *Phelps* factors, the trial court determined that Defendant entered the plea agreement voluntarily and intelligently and that he merely "wished" that the dismissal of the civil suit was part of the plea agreement. The trial court did not abuse its discretion in denying the motion to withdraw the guilty plea. For this Court, as a reviewing court, to hold otherwise would essentially constitute our reweighing the evidence that was before the trial court and substituting our judgment for that of the trial court. *State v. Quintis McCaleb*, No. E2017-01381-SC-R11-CD, ___ S.W.3d ___, 2019 WL 3940922, at *24 (Tenn. Aug. 21, 2019). Such an approach is contrary to our abuse of discretion standard of review. *Id.* Defendant is not entitled to relief on this issue.

We note that after the hearing at which the amount of restitution was determined, the trial court entered an order requiring Defendant to pay $5700 in restitution to the family of the victim at a rate of $200 per month. Restitution is, of course, mandated in theft cases. T.C.A. § 40-20-116(a). The uniform judgment document contains a section entitled "Restitution." On the original judgment form entered after the guilty plea, this

---

[1] A judgment of conviction becomes final thirty days after entry. *See State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003). Ordinarily a defendant can appeal only from a final judgment of conviction. Tenn. R. App. P. 3(b); *State v. Maddox*, 603 S.W.2d 740, 741 (Tenn. Crim. App. 1980). Tennessee Rule of Criminal Procedure 32(f), however, provides that a motion to withdraw a guilty plea can be filed prior to sentencing—before a judgment would be considered final. Necessarily, it follows that an appeal from the denial of a motion to withdraw a guilty plea can be had from a judgment that is not "final" in the typical sense of the word. *See* Tenn. R. App. P. 3(b).

section is blank. The special conditions section indicates that the judgment is "held open" until the determination of restitution. We remand the matter to the trial court for entry of an amended judgment form in which the "Restitution" box is completed to include the victim's name, address, total amount of restitution, and payment amount per month.

## *Conclusion*

The judgment of the trial court is affirmed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
TIMOTHY L. EASTER, JUDGE