FILED
05/07/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2018

## STATE OF TENNESSEE v. PATRICK JAYSON REENERS

**Appeal from the Criminal Court for Sumner County**
**Nos. 806-2015, 729-2015        Dee David Gay, Judge**

_____

### No. M2016-02184-CCA-R3-CD

_____

The Defendant, Patrick Jayson Reeners, pleaded guilty to public intoxication and disorderly conduct and received concurrent thirty day sentences. In a separate case, he pleaded guilty to telephone harassment and received a probation sentence of eleven months and twenty-nine days. After the entry of his guilty pleas and sentencing, the Defendant filed a motion to withdraw his guilty pleas "made under life threatening needed medical attention." The trial court denied the motion after a hearing. On appeal, the Defendant claims that the trial court erred when it did not find a "fair and just reason" to allow the Defendant to withdraw his pleas. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and CAMILLE R. MCMULLEN, JJ., joined.

Christopher V. Boiano, Hendersonville, Tennessee, for the appellant, Patrick Jayson Reeners.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Ray Whitley, District Attorney General; and Thomas B. Dean, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Guilty Plea Hearing**

On April 21, 2016, the Defendant pleaded guilty to disorderly conduct, a Class C misdemeanor, public intoxication, a C misdemeanor, (Case 729-2015) and telephone harassment, a Class A misdemeanor (Case 806-2015). The trial court reviewed the offenses for which the Defendant was entering guilty pleas and the agreed-upon sentences. The Defendant confirmed his understanding of the plea agreement. The Defendant stated that he was not taking any medication other than Ibuprofen and could "pass a drug test." He testified that his attorney had explained to him the elements of the crimes, the punishment, and the evidence. The Defendant stated that he believed he had all the information needed to make the decision to enter the plea. The trial court then reviewed the rights the Defendant was waiving by entering guilty pleas. The Defendant testified that he understood his rights and the rights he was waiving. As a factual basis for acceptance of the plea, the State offered the following facts:

> [T]he facts of Case 729-2015, disorderly conduct and public intoxication, those facts stem from events on the 21st day of July, 2015. At that time chalk drawings that said obscenities in reference to the police were found on the road in front [of] a police officer's home. . . . [The officer] was off-duty. He had a confrontation with the defendant. There was some profanity used by the defendant.
>
> Later another officer had an encounter with him where the defendant had some alcohol with him. He was coming home from the market, and that officer arrested him for both of these charges, public intox[ication] and disorderly conduct.
>
> In case 806-2015, this stems from phone calls made by the defendant to the Gallatin Police Department. As Your Honor knows, that's been sort of an ongoing problem from November 11th, 2014, or thereabouts. And it involves multiple calls to the employees of the Gallatin Police Department by the defendant in a repetitious and offensive manner.

Following the recitation of these facts, the Defendant agreed that he was guilty based on the facts as presented by the State. The trial court accepted the Defendant's guilty pleas and imposed the agreed-upon sentence of concurrent thirty day sentences for the disorderly conduct conviction and the public intoxication conviction. For the telephone harassment conviction, the trial court imposed a suspended sentence of eleven months and twenty-nine days.

**B. Motion to Withdraw Guilty Plea Hearing**

Trial counsel testified that he was appointed to represent the Defendant in March 2016, with regard to Case 729-2015 and Case 806-2015. On the day of the guilty plea hearing, the Defendant told trial counsel that he had been injured. Trial counsel recalled that, on the day the Defendant entered his guilty pleas, initially he was adamant that he would not enter any type of plea agreement. Trial counsel went into court intending to set the case for the trial docket. At some point, a deputy notified trial counsel that the Defendant wanted to speak with him. Trial counsel went out into the hallway, and the Defendant stated that he wanted to enter a guilty plea.

Trial counsel testified that he was shocked by the Defendant's statement of intent to plead guilty. He said to the Defendant, "You've changed your mind I don't know how many times. . . . Why?" The Defendant responded that he hurt his foot and was not getting proper medical treatment in the jail. If released from jail, he could seek medical treatment at Sumner Regional. Trial counsel pointed out to the Defendant that the Defendant was sitting in a wheelchair, so he must be getting "some type of treatment." The Defendant maintained, however, that he was not getting "the kind of treatment that [he] wanted." The Defendant then said, "I'm going to take a plea. . . . I know exactly what I'm doing."

Trial counsel testified that he believed the Defendant entered the guilty plea knowingly. He stated, "[the Defendant] would not have taken a plea if he didn't know it." Trial counsel recalled that he and the Defendant entered the courtroom together, and the Defendant pleaded guilty. Trial counsel said that he and the Defendant had exchanged approximately 156 email and text messages throughout his representation and, during that time, the Defendant had maintained his innocence. Trial counsel said that, based upon their communication, the Defendant was "totally aware of the charges levied against him."

Trial counsel testified that, at the time of the plea submission hearing, the Defendant had two notices of appeal: one from contempt orders and the other from the revocation of his bond. As part of the plea agreement, those appeals were to be dismissed. Trial counsel explained this to the Defendant and believed the Defendant understood. Trial counsel said the Defendant did not ask about and he did not discuss with the Defendant "any sort of relief" he might be able to seek following the guilty plea.

On cross-examination, trial counsel testified that the Defendant was "extremely intelligent" with a good knowledge of the criminal system. He confirmed that he had no question that the Defendant understood the consequences of entering the guilty pleas. On the day of the plea submission hearing, trial counsel did not observe any signs that the Defendant was distracted, sluggish, or not coherent. He further denied that there was any

element of coercion involved in the plea negotiation and hearing. Trial counsel recalled that he "questioned [the Defendant] severely" about his decision to enter a guilty plea but that the Defendant "[n]ever hesitated."

Trial counsel testified that, approximately a month before the guilty plea, the Defendant was in court and told the trial court about an injury to his knee from falling out of the bunk in his cell. The trial court "took great concern" in addressing the Defendant's medical concern, speaking with the medical personnel involved about the Defendant's treatment.

Upon further questioning by the trial court, trial counsel testified that he reviewed the evidence in the cases with the Defendant "[e]xhaustively." He stated that he was the Defendant's sixth attorney in relation to these cases. He confirmed that, pursuant to the plea agreement, the Defendant received time served for the thirty-day sentences, and he was released from jail the day of his guilty pleas. He confirmed his belief that the Defendant was "in pretty good condition mentally and physically" on the day of the guilty plea hearing and that he did not observe the Defendant experiencing any pain or discomfort. Trial counsel stated that the Defendant was adamant he would not plead guilty because "the police department, criminal justice system . . . city hall . . . was after him and there was no way that he was going to yield to their pressure." Trial counsel agreed that the Defendant saw himself as a political activist.[1] Trial counsel tried to explain to the Defendant that he was "just not going about [it] the right way."

Sharon Harris, an LPN at the Sumner County Jail, testified that she had treated the Defendant during his incarceration. She recalled that on April 20, 2016, the Defendant's left ankle was evaluated. The Defendant reported that while getting down off his bunk, he twisted his ankle. The ankle was x-rayed and a nurse provided the Defendant with ice and Ibuprofen. The x-ray showed no fracture or dislocation but did show a small bone spur on the Defendant's heel. This occurred at 3:00 p.m., and she received no other contact about the Defendant's heel.

Ms. Harris testified that the Defendant had been treated for a knee injury "around the 22nd of March." The Defendant reported having fallen off his bunk. The Defendant was provided with ice for inflammation for twenty-four hours after the fall and Ibuprofen for pain and swelling. The Defendant met with the doctor on March 20, 2016, and reported that "he felt good." The Defendant stood up during the appointment with the doctor to demonstrate that his knee issue was resolved.

---

[1] It appears from the record that the Defendant's charges stem from his activity fighting against fluoride use in his community.

The Defendant testified that he was in a wheelchair from March 22 until March 30, 2016. He stated that his knee improved, so he began walking. On April 20, 2016, he twisted his foot on an "opening" on the ladder on his bunk bed. The Defendant stated that his foot was swollen, red and "burning." Initially, he told trial counsel that he would not accept a plea, but after learning that "the doctor's going home and stuff," he spoke with Trial counsel again to confirm that he would be released that day if he pleaded guilty. Upon learning that he would be released so that he could go to the hospital to have his foot treated, he decided to plead guilty. The Defendant agreed that, at the guilty plea hearing, the trial court inquired about his knee. The Defendant said that he told the trial court that his knee was "fine" but that there was "an episode with [his] foot now." The Defendant stated that he had never experienced such intense pain and was concerned about the need to seek medical treatment for his foot.

The Defendant testified that he was released from jail at around 5:30 p.m. on the day he pleaded guilty. After release, he went to a friend's house, "Carl," to ask about a ride to the hospital. Carl was unable to provide the Defendant with a ride so he "hobbled on to the hospital." The medical records indicated an admission time of after 11:00 p.m. The Defendant was admitted to the hospital and remained there for six days while treated for an infection. The Defendant testified that he was not guilty of the offenses in Case 729-2015 (disorderly conduct, assault, and public intoxication) and, as such, he wanted to try the case. The Defendant confirmed that he was seeking to set aside his guilty plea because he "needed medical treatment." The Defendant testified that he also wanted a trial in Case 806-2015 (two counts of telephone harassment).

On cross-examination, the Defendant agreed that at the guilty plea hearing he did not tell the trial court that he was having an issue with his foot and request that the trial court intervene as it had done when he injured his knee. The Defendant agreed that when the trial court inquired about his knee at the guilty plea hearing he said, "My knee is better. . . . I did have another episode with my foot though, but my knee is a lot better." He said that he did not pursue further discussion about his foot injury because he "had already made [his] plan." He stated, "I wanted to get out to get to the hospital."

Upon questioning by the trial court, the Defendant confirmed that he was happy with trial counsel's representation and that trial counsel "did a good job." The trial court read a portion of the dialogue between the trial court and the Defendant at the guilty plea submission hearing after the State had recited the facts. In the transcript, the trial court asked the Defendant if he was guilty of the offenses as described by the State and the Defendant said, "Yes, Your Honor." After the trial court read this portion of the transcript aloud, the Defendant responded by saying, "I'm guilty of doing those things." The Defendant explained that he did not think the conduct described by the State was a crime, but again admitted that he was "guilty of doing this." When asked by the trial

- 5 -

court if he had lied at the guilty plea hearing when he testified that he was guilty, the Defendant said, "no."

After hearing the evidence, the trial court made the following findings:

I find that the defendant is not a credible witness. He has an agenda, unfortunately when he gets out, that he's committed to. That is what motivates him, and that is what motivated this particular motion. Again, I find that his credibility is severely lacking. I believe he will say or spin or twist whatever he wants to fit whatever he's wanting to get across at that particular time.

In looking at the law in this case, we look at Rule 32(f), and the *Turner* case -- the *Turner* case is sited [sic] at 919 S.W.2d 346, the Court of Appeals in 1995. In looking at that case, among others, and reviewing the evidence here, I find number one, that the defendant's pleas were voluntarily, understandingly, and intelligently entered.

Number two, I must find whether there was a manifest injustice in this particular case resulting in the withdrawing of the guilty plea and starting back at scratch. Manifest injustice permits withdrawal of a guilty plea if the plea was entered due to coercion, not here; fraud, not here. Maybe on his part. Duress, mistake, fear, gross misrepresentation; not by the State. Possibly on his part. By the prosecutor withholding the material of exculpatory evidence which influences the entry of plea, and the manifest injustice cannot be predicated upon the accused change of heart, his entry of a plea to avoid harsher punishment, or accused's dissatisfaction with harsh punishment imposed after the plea.

Now, it's interesting that [ ]there was no manifest injustice here. The defendant put on proof of evidence of his medical conditions including high blood pressure, arthritis, bursitis, pneumonia, conjunctivitis, and all conditions are being treated with medication. Neither physical conditions, nor medication inhibited the defendant's ability to knowledgably and intellectually review plea bargaining options. The fact is clear: The day of the plea the defendant was offered a time-served sentence and he jumped on that plea and took it. Who would not[?] Cases are legion where we've come back in post-conviction matters and other matters where it's very common that the defendant will change when he knows he's getting out of jail.

- 6 -

Now, this also enabled the defendant to get back and continue what he wanted to do as evidence by his pleadings that were entered here, the "Defendant/Victim of Corruption in Sumner County, Tennessee." I find that there was no manifest injustice here. I find that there was manipulation by the defendant of a stubbornness of wanting to get his way today to do anything to continue his activist motivations including what [trial counsel] testified to that the criminal justice system was the number one thing that motivated him.

The criminal justice system in Sumner County Criminal Court has been nothing but fair to this defendant. He's been afforded seven attorneys now, six before [trial counsel] got involved, and each one involved personality conflict with the defendant. I am thankful for [trial counsel], and I am thankful for Mr. Martin that were able to wade through all that and get to these particular points.

Further, the defendant has two federal lawsuits pending that are very important to him that enable him to keep his activism fresh and on going.

I find, that there is a valid guilty plea here. I find that the foot had nothing to do with the fact that he pled guilty on that day. It was just a convenient situation that he has used to manipulate this Court as in the past.

Therefore, [Defendant], your motion to withdraw your guilty plea is respectfully denied for all those reasons.

It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred when it did not find a "fair and just reason" to allow him to withdraw his plea. The State responds that the record supports the trial court's finding that the Defendant entered his guilty plea voluntarily and knowingly and that there is no manifest injustice requiring correction. We agree with the State.

Generally, "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *State v. Phelps*, 329 S.W.3d 436, 444 (Tenn. 2010); *see also State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). Although the trial court "'should always exercise [its] discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may

have a fair and impartial trial,'" *Phelps*, 329 S.W.3d at 444 (quoting *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)), "the defendant bears the burden of establishing sufficient grounds for withdrawing his plea." *Id.* (citing *Turner*, 919 S.W.2d at 355).

Whether a defendant should be allowed to withdraw his guilty plea is within the sound discretion of the trial court. *State v. Mellon*, 118 S.W.3d 340, 345-46 (Tenn. 2003) (citing *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)). On appeal, "[t]he trial court's decision 'will not be reversed unless it clearly appears that there was an abuse of discretion.'" *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005) (quoting *Henning*, 201 S.W.2d at 671). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." *Id*. (citing *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)).

Rule 32(f) of the Tennessee Rules of Criminal Procedure provides the standards governing the withdrawal of a guilty plea. The rule is as follows:

> (1) Before Sentence Imposed. Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.

> (2) After Sentence But Before Judgment Final. After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct *manifest injustice*.

Tenn. R. Crim. P. 32(f) (emphasis added). The rule dictates that one of two standards is to be applied, and which standard governs depends on whether a defendant moves to withdraw his guilty plea before or after a sentence is imposed. *Crowe*, 168 S.W.3d at 740-41. As the Defendant in the present case moved to withdraw his guilty plea after the sentence was imposed, the latter, more strenuous standard applies. *See id*. Accordingly, the trial court should have allowed the guilty plea to be withdrawn only to correct a "manifest injustice." *See id.*; *see also* Tenn. R. Crim. P. 32(f)(2).

Tennessee courts have allowed the withdrawal of guilty pleas to prevent manifest injustice where:

> (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant

- 8 -

was denied the effective assistance of counsel in connection with the entry of the plea.

*Crowe*, 168 S.W.3d at 742 (citations, footnotes, and internal quotations omitted). The "manifest injustice" standard "is based 'upon practical considerations important to the proper administration of justice.'" *Id.* at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir.1963)). While the term "manifest injustice" has not been defined by statutory or case law, courts have identified on a case-by-case basis circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. *See State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The defendant bears the burden of establishing that the plea should be withdrawn. *Id.* at 353.

The trial court found no reason to allow the Defendant to withdraw his guilty plea and our review of the record supports the trial court's decision. The plea submission hearing transcript indicates that the Defendant understood his sentence and willingly entered the plea. The Defendant was properly advised of all of his rights. The trial court, advised him of the sentence, and the Defendant stated that he wanted to plead guilty. Further, the Defendant confirmed at the motion hearing that, at the time of the plea submission hearing, he chose to enter the plea to be released from jail on that day. Moreover, at the motion hearing, the Defendant admitted, again, that he committed the offenses as provided by the State as a factual basis for the plea. He stated his opinion that his conduct did not constitute crimes but he agreed that he acted as described by the State. He also testified that he did not lie to the trial court at the plea submission hearing when he admitted his guilt. Accordingly, we cannot conclude that the trial court abused its discretion when it denied the Defendant's motion.

### III. Conclusion

Based on the foregoing, the judgments of the trial court are affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE