IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 9, 2022

**STATE OF TENNESSEE v. EARLIE M. JONES**

**Appeal from the Circuit Court for Maury County**
**Nos. 28167, 28152, 28153  Stella L. Hargrove, Judge**

_____

**No. M2021-00087-CCA-R3-CD**

_____

The defendant, Earlie M. Jones, pled guilty to burglary, shoplifting, subsequent offense driving on a revoked license, and evading arrest,[1] resolving the charges against him in five separate indictments. As a result of his plea, he was sentenced to an effective term of four years' incarceration. On appeal, the defendant argues the trial court erred in denying his oral motion to withdraw his guilty pleas prior to imposition of the sentence. After review, we affirm the judgment of the trial court but remand the case for entry of corrected judgments in Count 1 of case number 28153 and Count 2 of case number 28152.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. ROBERT H. MONTGOMERY, JR., J., concurring in results only.

Brandon E. White (on appeal), Columbia, Tennessee; Travis Jones, District Public Defender (at sentencing hearing); and Amanda L. Dunavant, Assistant District Public Defender (at plea hearing), for the appellant, Earlie M. Jones.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Kyle Dodd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

_____

[1] As we will address below, there is a discrepancy in whether the defendant pled guilty to one or two counts of evading arrest.

This case involves the resolution of nine charges across five indictments against the defendant, all involving different factual bases. In case number 28152, the defendant was charged with evading arrest and subsequent offense driving on a revoked license. In case number 28153, he was charged with evading arrest and subsequent offense driving on a revoked license on a different date. In case number 28154, he was charged with possession of drug paraphernalia. In case number 28167, he was charged with burglary and shoplifting. In case number 28168, he was charged with shoplifting and criminal trespass.

The guilty plea petition and the plea hearing transcript indicate the defendant pled guilty to evading arrest and subsequent offense driving on a revoked license in case number 28152, evading arrest in case number 28153, and burglary and shoplifting in case number 28167. The remaining charges were all nolle prosequied. The plea petition indicates the defendant agreed to be sentenced as a Range II offender with the length of sentence to be determined by the trial court. Yet, the trial court's comments at the plea hearing indicated the court expected the parties to recommend an agreed sentence at the sentencing hearing.[2] Additionally, per an agreement of the parties, the defendant pled guilty on November 2, 2020, but sentencing was delayed until January 4, 2021, to allow the defendant to be home for the Christmas and New Year's holidays. We note, however, that the defendant was arrested and pled guilty to a new charge after entering his plea in this case but prior to the sentencing hearing.

In support of the charges to which the defendant pled guilty, the State described the underlying facts as follows: The defendant entered a Kroger store from which he had been banned and concealed a number of steaks in a backpack within a motorized shopping cart and left the store. He subsequently led the police on low-speed chases on different dates when they attempted to arrest him.

At the plea hearing, the defendant testified he was fifty-eight years old and had gone through sixth grade in school. He acknowledged he understood the plea paperwork and had reviewed it with his lawyer. He also confirmed he had not consumed any alcohol, his diabetes and blood pressure medications did not interfere with his understanding of the proceedings, and no one had threatened him or made any promises to him in exchange for pleading guilty. Finally, the defendant admitted he was guilty of the charges.

The defendant acknowledged he was giving up various trial and appellate rights by pleading guilty. He understood the possible sentence ranges he faced on the three felony convictions and confirmed he would be sentenced as a Range II offender. He recognized the court would "most likely" accept whatever sentence recommendation the parties

---

[2] At the sentencing hearing, defense counsel informed the court "it was an agreed four-year sentence to serve."

presented at the sentencing hearing. The defendant averred he understood "everything [the court was] saying." At some point during the plea colloquy, the trial court inquired whether the defendant "ha[d] a rough night?" The defendant responded, "No," and explained that his arthritis was making it difficult to stand. At the conclusion of the hearing, the trial court found "the plea of guilty of [the defendant] is entered freely, voluntarily, knowingly, and intelligently, upon advice of counsel."

At the outset of the January 2, 2022 sentencing hearing, trial counsel informed the court the defendant had indicated to trial counsel that he wanted to set his case for trial, but trial counsel was unsure whether that was an option given the defendant's plea two months earlier. The defendant requested to address the trial court on the matter, and when doing so, informed the trial court that he wanted another lawyer because he felt trial counsel had only been concerned with reaching an agreed sentence rather than listening to his desire to go to trial. The defendant also complained he did not have thirty days to withdraw his guilty plea because he was incarcerated on another charge after the plea hearing.

The defendant claimed he "was really drugged up" at the plea hearing, was "sleeping in court and . . . wasn't really in [his] right mind." He said he "had been up all night long, . . . didn't know what [he] was doing[,]" and was in "too bad of shape." Despite his comments that he did not have thirty days to move to withdraw his plea, the defendant also claimed he thought he had ninety days to withdraw his plea. The defendant testified he "really can't read or write and . . . can't understand stuff like that[.]" Finally, the defendant claimed he and trial counsel "didn't have a really good agreement" and every time they talked "it would be an argument" because trial counsel was "always negative in [his] case."

After hearing the defendant's complaints, the trial court placed the agreed four-year sentence into effect and informed the defendant of his right to appeal. The judgment forms indicate a sentence of four years for burglary and eleven months and twenty-nine days for shoplifting in case number 28167, and three years for evading arrest and eleven months and twenty-nine days for subsequent offense driving on a revoked license in case number 28152, all aligned concurrently for an effective sentence of four years. Despite the plea petition and the transcript of the plea hearing showing that the defendant pled guilty to evading arrest in case number 28153, the judgment forms show that both counts in case number 28153, evading arrest and driving on a revoked license, were nolle prosequied. The defendant appealed.

***Analysis***

On appeal, the defendant challenges the trial court's failure to let him withdraw his guilty pleas. He claims the trial court abused its discretion in denying his oral motion to

withdraw without engaging in "any meaningful analysis relative to whether a 'fair and just reason' existed for permitting [him] to withdraw his guilty pleas."

This Court reviews a trial court's determination regarding a motion to withdraw a guilty plea for an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). An abuse of discretion occurs when a trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, . . . applies reasoning that causes an injustice to the complaining party[, or] . . . fail[s] to consider the relevant factors provided by higher courts as guidance for determining an issue." *Id.* (internal citations omitted).

Tennessee Rule of Criminal Procedure 32(f) provides that a trial court may grant a motion to withdraw a guilty plea for any fair and just reason before the sentence has been imposed. Tenn. R. Crim. P. 32(f)(1). After the sentence has been imposed but before a judgment becomes final, "the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). "[A] judgment of conviction entered upon a guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence." *State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003).

Rule 32(f) makes it clear that "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *Phelps*, 329 S.W.3d at 444; *see State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005); *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003). "The defendant bears the burden of establishing sufficient grounds for withdrawing [a] plea." *Phelps*, 329 S.W.3d at 444; *see State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).

In *Phelps*, our supreme court adopted a "non-exclusive multi-factor test" to be used in determining if there was "any fair and just reason" to allow withdrawal of a guilty plea. *Phelps*, 329 S.W.3d at 446. Those factors are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)) (internal quotations omitted). However, the "list of factors is not exclusive[,] . . . no single factor is dispositive[,] and . . . the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw." *Id.* In addition, "a trial court need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal." *Id.* at 446-47; *see United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987).

We initially observe that the defendant never filed a written motion to withdraw his guilty plea before the trial court. At the onset of the sentencing hearing, the defendant was given an opportunity to complain to the trial court about his plea agreement and counsel's representation, but it appears the trial court did not view the defendant's statements as an motion to withdraw because the court's only comment on the issue was, "I will certainly look at it but right now it's really difficult to withdraw a plea." The trial court then proceeded with the sentencing hearing and never issued a ruling concerning the guilty plea. Moreover, the defendant's statements can only be construed as an oral motion to withdraw guilty plea and not just a complaint of his being past the time frame for withdrawing his plea under the most liberal interpretation.

In addition, it does not appear this Court has jurisdiction to hear this appeal. Tennessee Rule of Appellate Procedure 3(b) permits an appeal "from the denial of a motion to withdraw a guilty plea under Rule 32(f)," but there is nothing in the record to indicate the trial court ever issued a ruling on a motion to withdraw guilty plea, if such motion was made, from which the defendant could appeal.

Despite the jurisdictional question, even taking a liberal interpretation of the defendant's statements at the sentencing hearing to constitute an oral motion to withdraw guilty plea and ignoring the lack of a ruling from which the defendant could appeal as of right, there was no "fair and just reason" supporting withdrawal of the defendant's pleas. First, over two months elapsed between the entering of the guilty plea and the "motion" to withdraw, coincidentally happening when it was time for the defendant to go to jail. This factor weighs against the defendant. *See Phelps*, 329 S.W.3d at 449 (concluding a period of "almost seven weeks" between the entry of the plea and the filing of the motion to withdraw the guilty plea was "a significant length of time" and "weigh[ed] somewhat against Defendant"); *State v. Kevin Glenn Tipton*, No. E2012-00038-CCA-R3-CD, 2013 WL 1619430, at *12 (Tenn. Crim. App. Apr. 13, 2013) (stating that a period of more than six weeks between the entry of the guilty plea and the filing of the motion to withdraw the guilty plea was "a substantial amount of time").

Second, the reasons given by the defendant for his failure to move for withdrawal sooner appear to be that he thought he had a longer amount of time and that trial counsel

"didn't let [him] know [he] could change [his] plea or whatever today." Because there was no hearing on the issue, there was no opportunity for the presentation of proof to counter the defendant's self-serving claims; thus, this factor is at best neutral. However, we also observe that at one point during the sentencing hearing the defendant complained he did not have an opportunity to move to withdraw his guilty plea because he was incarcerated on a new charge. If the reason for the defendant's failure to move for withdrawal sooner was his incarceration on a new charge, such would certainly weigh against the defendant.

Third, the defendant has never asserted or maintained his innocence in any proceeding and, in fact, plainly admitted his guilt at the plea hearing. This factor weighs against the defendant.

Fourth, the circumstances surrounding the plea show the defendant was advised of his rights and sentencing exposure, and he acknowledged he understood the plea paperwork and had reviewed it with his lawyer. The defendant readily admitted he was guilty of the charges. The defendant said he had not consumed any alcohol, and his diabetes and blood pressure medications did not interfere with his understanding of the proceedings. When asked, the defendant told the trial court he had not had "a rough night" and indicated the difficulty in standing he was apparently displaying was due to arthritis. All evidence indicates the defendant fully understood what he was doing when he pled guilty. However, at the sentencing hearing, the defendant claimed that at the time of the plea hearing he "was really drugged up," was "sleeping in court and . . . wasn't really in [his] right mind." He said he "had been up all night long, . . . didn't know what [he] was doing[,]" and was in "too bad of shape." The defendant repeatedly expressed dissatisfaction with his relationship with trial counsel and indicated his desire to have another attorney represent him. In sum, the defendant's self-serving statements at the sentencing hearing, as he was about to go to jail, were completely contradictory to his sworn statements at the plea hearing. This factor is at best neutral.

Fifth and sixth, regarding the defendant's nature and background and prior experience with the criminal justice system, the record shows the defendant was fifty-eight years old at the time of the plea and had a sixth-grade education. Despite his lack of education, the defendant affirmed to the trial court at the plea hearing that he was able to understand the paperwork and had gone over it with trial counsel. This is contrary to the defendant's later claim at the sentencing hearing when he said he "really can't read or write and . . . can't understand stuff like that[.]" Although a presentence report was not prepared in the case, the defendant evidently has a history of disrespect for the law as he qualifies as a Range II offender. There is no evidence regarding his employment history in the record before us. These factors both weigh against the defendant or, at best, factor five is neutral.

Seventh, we need not consider the potential prejudice to the government if withdrawal is granted because the defendant did not establish a fair and just reason for permitting withdrawal; however, we note the record does not indicate whether the State would be prejudiced.

On balance, the record simply does not support a fair and just reason for allowing the defendant to withdraw his guilty pleas. Accordingly, the defendant is not entitled to relief.

Finally, though not raised by either party, our review of the record reveals an apparent discrepancy between the transcript of the sentencing hearing and the judgments entered by the trial court. The plea hearing transcript indicates the defendant's plea to a total of two evading arrest charges, but the judgment form for Count 1 of case number 28153 designates the evading arrest charge as nolle prosequied. When there is a conflict between the judgment of conviction and the transcript of the proceedings, the transcript controls. *See State v. Crowe*, 168 S.W.3d 731, 735 n.1 (Tenn. 2005); *State v. Davis*, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985). "The most reliable indicator that clerical error was made is the transcript of the hearing or other papers filed in connection with the proceedings which show the judgment was not correctly entered." *Donald W. Rhea, Jr. v. State*, No. M2003-01034-CCA-R3-CO, 2004 WL 343969, at *3 (Tenn. Crim. App. Feb. 24, 2004) (quoting *State v. Jack Lee Thomas, Jr.*, No. 03C01-9504-CR-00109, 1995 WL 676396, at *1 (Tenn. Crim. App. Nov. 15, 1995)). Therefore, we remand for the trial court to enter a corrected judgment indicating a guilty plea to Count 1 in case number 28153. Likewise, the transcript and plea petition indicate the defendant pled guilty to fourth offense driving on a revoked license, not fifth offense as notated on the judgment form. Accordingly, on remand, the trial court also needs to enter a corrected judgment in Count 2 of case number 28152.

## *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed; however, we remand for entry of corrected judgments in Count 1 of case number 28153 and Count 2 of case number 28152 in accordance with this opinion.

_____
J. ROSS DYER, JUDGE